FIRST NATIONAL BANK OF SULLIVAN, Plaintiff-Appellant and Cross-Appellee, *v.* ROBERT R. BERNIUS, Defendant-Appellee and Cross-Appellant.

Fourth District   No. 4—84—0016

Opinion filed August 21, 1984.

Dale A. Cini, of Ryan, Grabb, Cini & Bennett, of Mattoon, for appellant.

Burger, Fombelle, Dvorak, Baxter & Zachry, P.C., of Decatur (Norman J. Fombelle and James E. Zachry, of counsel), for appellee.

JUSTICE GREEN delivered the opinion of the court:

On June 14, 1982, plaintiff, First National Bank of Sullivan (Bank), filed suit in the circuit court of Moultrie County against defendant, Robert R. Bernius, seeking recovery on two promissory notes. Count I concerned a note in the principal sum of $53,170.64, and a jury trial was held on that count in May 1983. On May 12, 1983, the jury returned a verdict in favor of defendant. Judgment was subsequently entered on the verdict. Plaintiff appeals. Defendant has cross-appealed. We affirm.

We consider the cross-appeal first. Defendant claims that the trial court erred in denying his motion to dismiss plaintiff's post-trial motion because that motion was not filed within 30 days of the entry of the judgment on the verdict as required by section 2—1202(c) of the Code of Civil Procedure (Ill. Rev. Stat. 1981, ch. 110, par. 2—1202(c)). The post-trial motion was filed on July 1, 1983. A dispute exists as to whether the judgment on the verdict was (1) entered on May 31,

1983, as maintained by defendant, in which case the July 1, 1983, motion was tardy, or (2) entered on June 1, 1983, as asserted by plaintiff, in which case it was timely.

The docket (1) indicated that a judgment on the verdict was pronounced in open court on May 12, 1983, and also (2) contained a notation stating "Written Order to be filed." The docket for May 31, 1983, then stated "Judgment Orders on Counts I and II on file." However, a written judgment order as to count I, signed by the trial judge stating that it was "entered" on May 31, 1983, but bearing the file mark of June 1, 1983, appears in the record.

Supreme Court Rule 272 (87 Ill. 2d R. 272) provides that if, when final judgment is pronounced, the judge directs that a written form of judgment be signed by him, the clerk shall, as here, so note "and the judgment becomes final only when the signed judgement is *filed*." (Emphasis added.) The parties do not dispute that the time for filing the post-trial motion began to run upon the filing of the signed order. Thus, the dispute is as to whether the file mark of June 1, 1983, or the docket entry stating that the filing took place on May 31, 1983, should have been followed.

■■■ We hold that plaintiff's post-trial motion was timely filed on July 1, 1983, because the judgment attacked was entered on June 1, 1983. In making our decision we note that the Director of the Administrative Office of the Illinois Courts has not designated the circuit court of Moultrie County to be a court in which the Supreme Court Administrative Order on record keeping (Ill. Ann. Stat., ch. 25, par. 16 (Smith-Hurd 1984 Supp.)) is applicable. Accordingly, we need not consider the effect, if any, that order might have here. Under prior precedent, a docket entry is not the ultimate entry of the court's judgment in a civil case, at least when there is an additional entry to be made. (See *Scott v. Dreis & Krump Manufacturing Co.* (1975), 26 Ill. App. 3d 971, 983-84, 326 N.E.2d 74, 82.) By analogy, a docket entry would not control over the ultimate order even as to the filing date when a written order is required. (See *Davidson Masonry & Restoration, Inc. v. J. L. Wroan & Sons, Inc.* (1971), 2 Ill. App. 3d 524, 275 N.E.2d 654.) It did not do so here.

Uncontradicted affidavits submitted by plaintiff in support of its response to defendant's motion to dismiss the post-trial motion clearly showed that (1) the trial judge signed the judgment on May 31, 1983, and mailed it on that date from his office in his county of residence to the Moultrie County circuit clerk, (2) the clerk filed the judgment on June 1, 1983, and (3) the docket entry showing the filing date of May 31, 1983, was entered by inadvertence. We need not decide whether

this information was proper for consideration in interpreting the court records but, if we are permitted to consider the affidavits, they fully support our decision.

Our ruling on defendant's cross-appeal obviates a need for us to consider, *sua sponte*, whether we are deprived of jurisdiction on the theory that (1) the post-trial motion was tardy and a nullity, (2) thus, the time for filing notice of appeal began upon the entry of the judgment on the verdict, and (3) notice of appeal was not filed within 30 days from that date.

We now consider the issues raised on plaintiff's appeal. It contends that (1) the trial court should have entered judgment *n.o.v.* in favor of plaintiff; (2) error arose from rulings on evidence; (3) defense trial tactics improperly prejudiced plaintiff; and (4) the court erred in ruling on instructions. It requests that a judgment *n.o.v.* in its favor be entered, or in the alternative, that it be awarded a new trial.

On March 17, 1980, Michael Bernius, defendant's son, gave the Bank a short term note in exchange for a loan of $55,690.61. The proceeds were used in partial payment of a previous loan. At the same time Michael sold his home, using part of the proceeds to pay the balance of the previous loan and another part of the proceeds to purchase a house with the deed taken in defendant's name. Some days after Michael executed that note, defendant also signed it. By the terms of the document, his liability was limited to his equity in that real estate. On June 17, 1980, Michael met at the Bank with its cashier, Richard H. Burcham, and signed the note upon which count I was brought. It was in the principal sum of $53,170.64, bore interest at the rate of 17% per annum, and had a duration of three months. The March 17, 1980, note was paid with the proceeds of this note and by money which Michael had received from the sale of a boat. After some payments had been made on the June 17, 1980, note, Michael's obligation on the note was discharged by his bankruptcy.

A signature purporting to be that of defendant also appeared as a maker on the June 17, 1980, note. This note contained no provision which purported to limit the liability of defendant. The parties are in agreement that defendant did not sign the note on June 17, 1980. The dispute is as to whether he signed the note later. Defendant concedes that if he did, in fact, sign the note, he has no defense on the note. Thus, the question of whether plaintiff was entitled to a judgment *n.o.v.* depends entirely upon whether the proof that defendant did sign the note is so strong that a contrary decision could never stand. *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504.

The thrust of the plaintiff's proof that the defendant had signed the note was the testimony of Burcham. He stated (1) that when Michael signed the note, he told Michael to have his father come over to the bank and sign the note, and (2) that several days later, defendant came over and, after reading the note, signed without comment. The Bank's president, John Hagen, testified that the note had been in the continuous possession of the Bank from June 17, 1980, until turned over to its attorneys for collection.

When shown a copy of the June 17, 1980, note while testifying in his own behalf, defendant denied signing the note. When asked if the signature on the note purporting to be his was, in fact, his, defendant answered, "No, I don't think it is, no." He stated that he was positive that no one from the Bank ever asked him to sign the note and that the first he heard that the Bank might be looking at him for payment was a letter from Hagen on October 6, 1981. Evidence was introduced of a deposition wherein defendant had testified that he could not remember signing the note, but the signature could be his and then stated, "No, I am not saying that I didn't sign it, no." However, defendant testified that he had studied the matter since suit was filed and had become positive that he had not signed the note. He further testified that he would not have signed a note for the amount of money involved, because he could never have paid the note.

Defendant's testimony was supported by that of his son Michael, who denied that (1) Burcham had asked him to obtain defendant's signature, (2) he had asked defendant to sign the note in question, or (3) he had placed the disputed signature on the note himself. Certain circumstantial evidence also supported the defense. When Michael had signed the note, he had immediately been given a copy of the note, although it was not usual bank practice to disburse copies of a note until all of the signatures had been obtained. The Bank also treated the prior note as having been discharged on July 17, 1980, even though, admittedly, defendant's signature had not yet been obtained. Burcham explained this procedure on the basis that Michael and defendant were being given a "break" because the interest of the new note was 17% and it was 25% on the old one.

Certain other circumstantial evidence had at least some probative value in supporting defendant's position. We will later discuss the admissibility of that evidence.

In the state of this evidence, plaintiff's contention that it was entitled to judgment as a matter of law is not aided by section 3—307 (1)(b) of the Uniform Commercial Code (Ill. Rev. Stat. 1983, ch. 26, par. 3—307(1)(b)), which provides that, when the validity of a signa-

ture on an instrument is put in issue, "the signature is presumed to be genuine or authorized except" under circumstances not applicable here. The Uniform Commercial Code Comment to that section indicates that the presumption vanishes when sufficient evidence is put on to justify a finding that the signature is not valid. (Ill. Ann. Stat., ch. 26, par. 3—307, Uniform Commercial Code Comment, at 203-04 (Smith-Hurd 1963).) Thus, the presumption is one of going forward with the evidence and is subject to the "bursting bubble" theory of presumptions. (See *Franciscan Sisters Health Care Corp. v. Dean* (1983), 95 Ill. 2d 452, 448 N.E.2d 872.) The question as to whether the presumption vanishes involves the same test as that to determine whether the verdict can stand absent the existence of the presumption.

Defendant relies on *Steven v. Falese Land Co.* (1977), 50 Ill. App. 3d 231, 365 N.E.2d 967, and *dictum* in *Burkett v. Finger Lake Development Corp.* (1975), 32 Ill. App. 3d 396, 336 N.E.2d 628. In *Steven*, a counterclaim was brought on a note that had not been inventoried in the estate of the deceased payee nor had any prior demand been made although it was overdue. By answer to the counterclaim, the alleged maker had denied under oath that he had signed the note, but he was not permitted to testify because of the Dead Man's Act. (Ill. Rev. Stat. 1973, ch. 51, par. 2.) Evidence showed that the alleged maker had received, endorsed, and deposited a check from the payee in the amount of the note on the day of the note. A trial court judgment in favor of the alleged maker was overturned on the basis that the *prima facie* case put on by the payee's estate had not been overcome. In *Burkett*, the court stated that a simple denial of the signing of a note was not sufficient to support a motion to open up a judgment by confession and that the motion must state facts to overcome the statutory presumption.

In *Steven*, unlike here, the alleged maker did not testify at trial, was not subject to cross-examination, and the inference from the maker's having received a sum of money from the payee equal to the amount of the note on the day of the note was very strong. Here, defendant did testify, and the proceeds of the note were, in effect, distributed on the day of Michael's signature without defendant having yet signed the note. Here, unlike in *Burkett*, there was a presentation of some facts lending support to defendant's position.

■ We conclude that a question of fact for the trier of fact was presented as to whether defendant signed the June 17, 1980, note. His denial was subject to some equivocation, but some circumstantial evidence supported his contention. The presentation of a factual ques-

tion both overcame the presumption of section 3—307(1)(b) and supported the jury's verdict. We cannot say that a different result was clearly evident. (*Clark Oil & Refining Corp. v. Golden* (1983), 114 Ill. App. 3d 300, 448 N.E.2d 958.) Nor can we say that defendant could never prevail on the evidence. *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504.

A question closely related to the matter of the sufficiency of the evidence to support the verdict arises from the trial court's ruling on an instruction. Plaintiff asserts that error resulted from the trial court's giving of defendant's instruction No. 2, which was Illinois Pattern Jury Instruction (IPI), Civil, No. 1.03 (2d ed. 1971). It stated:

> "A fact may be proved by circumstantial evidence. Circumstantial evidence consists of proof of facts or circumstances which give rise to a reasonable inference of the truth of the facts sought to be proved."

Plaintiff's objections in the trial court and here are not in exactly the same language, but both raise the concern that, in a case where the validity of a signature to a negotiable instrument is in issue, the proof of invalidity is required to be very strong to support a determination that a purported maker did not sign the document.

Here, plaintiff asserts that the instruction was in error because by virtue of the provisions of the Uniform Commercial Code the inference that the signature was not that of defendant can only be drawn from circumstantial evidence if that is the only inference to be drawn from the evidence. At trial, plaintiff's objection was stated in these words:

> "[T]here is no circumstantial evidence which would support a finding that the defendant did not execute the note in question and to give this instruction would suggest to the jury and they can conclude, the person's signature is a forgery or not genuine, based on circumstantial evidence. I submit higher proof is required and there is no circumstantial evidence which would permit such a finding or support such a finding."

We need not determine whether the disparity between the objections to the instruction stated at trial and the claim of error made before us cause the issue to be waived. Nor need we consider whether the usual rules concerning circumstantial evidence in civil cases are applicable to a case where the validity of a signature on an instrument is in issue. The evidence tending to show that defendant did not sign the note was not entirely circumstantial, for he testified that he did not sign it. Any equivocation on his part does not eliminate his testimony as direct evidence. For the jury to conclude that defendant

was lying or mistaken in his testimony that he did not sign the instrument but, nevertheless, to determine that he did not sign it because of circumstantial evidence would be almost impossible. Thus, the chance of prejudice in the instruction was very remote. The purpose of the circumstantial evidence here was to add weight to defendant's direct evidence.

We also note that no case has been called to our attention holding the giving of IPI Civil No. 1.03 to be erroneous, because the instruction does not require the inference drawn to be the only inference that can be drawn.

Plaintiff maintains that various items of evidence admitted by the court were irrelevant or immaterial and were prejudicial to it. Defendant contends that the evidence was probative and proper. Although some of the evidence had limited probative value and was somewhat prejudicial, we conclude that reversible error did not occur.

■ Prior to trial the court allowed a portion of a motion *in limine* and prohibited defendant from introducing evidence of his financial circumstances or his ability to pay the debt. After the plaintiff had introduced portions of defendant's deposition in which he had equivocated concerning his certainty as to whether he signed the note, defendant was permitted to introduce portions of the deposition where defendant had stated that he did not think he had signed the note, because he would not have taken on such a large debt at his age. The court did not abuse its discretion in permitting this testimony. The court properly permitted the plaintiff to cross-examine defendant concerning the state of his mind in regard to whether he signed the note. This raised the issue of defendant's uncertainty in his mind as to whether he had signed the note. The reasons why defendant believed that he had not signed the note then had some relevancy as to defendant's state of mind. A witness' testimony as to his state of mind is not hearsay and is admissible if material and relevant. See *Pfiester v. Western Union Telegraph Co.* (1917), 282 Ill. 69, 74, 118 N.E. 407, 409; *People v. Weil* (1910), 244 Ill. 176, 182, 91 N.E. 112, 114.

■ The evidence that Michael was given a copy of the note when no other signature had been placed on the note was probative, circumstantially, that the Bank was following the procedure which would be used if no other signature was expected before completion of the transaction. The court properly permitted defendant to cross-examine Burcham in regard to the criticism he might receive from bank examiners for making bad loans. This was probative as to the incentive that Burcham might have to make his testimony favorable to the

Bank. Questioning as to the number of loans that the bank had was probative of whether the Bank official's memory might be faulty as to this loan. This information could have been put before the jury without requesting dollar amounts of loans, but no reversible error resulted from the dollar amount also being requested. Evidence of the procedures followed when the March 17, 1980, note was signed bore upon the reasonableness of the testimony of the parties' witnesses as to what occurred with regard to the June 17, 1980, transaction. Evidence as to when defendant first learned that the Bank was maintaining that he was liable on the note was immaterial absent any contention that the Bank had taken action inconsistent with his being considered to be a maker on the note. However, no prejudice arose from this evidence. Similarly, evidence concerning matters involving a sale of Michael's first home had little probative value but was not prejudicial.

■ We also find no reversible error arising from a group of other matters concerning evidence. Defense counsel improperly repeated a question upon which objection had been sustained in regard to whether defendant had personal liability on the March 17, 1980, note. Although a demand letter by Hagen to defendant requesting payment on the July 17, 1980, note introduced by defendant had little probative value, the foundation for the exhibit was not insufficient for lack of showing that it was in the same condition when offered as at relevant times. That requirement applies to physical objects other than writings. (E. Cleary & M. Graham, Illinois Evidence sec. 901.2, at 482 (3d ed. 1979).) The trial court refused to permit plaintiff to cross-examine defendant as to whether he knew that some equipment Michael held as security had disappeared. We fail to see any substantial probative value in an affirmative or negative answer to that question.

■ ■ The trial court did not err in refusing plaintiff's instruction No. 5, which informed the jury that the fact that the note was executed on a date after June 17, 1980, and the proceeds of the loan were used to repay the March 17, 1980, note were not defenses. This instruction might have been applicable if the question of consideration were in issue at the conclusion of the case, as it bore on that issue, but did not speak to an issue before the jury. Furthermore, even if that issue had been before the jury, the verdict would have been controlled by an interrogatory submitted to the jury on the question of whether defendant signed the note. The interrogatory was answered in the negative. The court also acted in its discretion in refusing plaintiff's instruction No. 6 concerning the issues. Court's instruction No. 1, given as to the issues, was more concise and fully set forth the is-

sues. The court properly refused plaintiff's instruction No. 7 which told the jury of the presumption arising from section 3—307 of the Uniform Commercial Code. As we have previously held, the evidence in this case destroyed that presumption. Without objection by plaintiff, the court gave an instruction defining the word "genuine" which was not used in any given instruction. No substantial prejudice arose thereby, and no plain error resulted.

We find no reversible error to have occurred. We do not find plaintiff to have suffered a substantial amount of prejudice from those few errors that did occur. Our affirmance is for these reasons.

Affirmed.

MILLS, P.J., and MILLER, J., concur.