WEST SHORE ASSOCIATES, LTD., Plaintiff-Appellant, v. AMERICAN WIL-
BERT VAULT CORPORATION *et al.*, Defendants-Appellees.

First District (4th Division)   No. 1—93—2225

Opinion filed December 29, 1994.

Schuyler, Roche & Zwirner, of Chicago (Michael B. Roche, Jeffrey E. Schiller, and Peter C. Warman, of counsel), for appellant.

McBride, Baker & Coles, of Chicago (Thomas P. Ward, N.A. Giambalvo, and Lorijean G. Oei, of counsel), for appellees.

PRESIDING JUSTICE HOFFMAN delivered the opinion of the court:

Plaintiff, West Shore Associates, Ltd. (West Shore), a minority shareholder of American Wilbert Vault Corp. (AWV), brought this action against AWV and its officers (collectively defendants), alleging that it had been denied the right to inspect AWV's corporate books and records in violation of section 7.75 of the Business Corporation Act of 1983 (Act)(Ill. Rev. Stat. 1989, ch. 32, par. 7.75). West Shore sought, *inter alia*, an order compelling the production of the requested records and a penalty in the sum of 10% of the value of its shares as provided in section 7.75(d) of the Act. (Ill. Rev. Stat. 1989, ch. 32, par. 7.75(d).) After a complete trial on the merits, the court found that West Shore had failed to sustain its burden of proving that its request for an inspection of AWV's records was for a proper purpose, and entered judgment in favor of defendants. West Shore now appeals.

AWV is an Illinois corporation engaged in the sale of concrete burial vaults in the Chicago metropolitan area. At all times pertinent to this litigation, approximately 4,450 shares of AWV's $100 par value common stock were issued and outstanding. In April of 1989, West Shore acquired six of those shares. West Shore's president and

principal owner is Richard Wehman, who is also the president and principal owner of Sterling/Kay-El Company, AWV's primary competitor in the burial vault business. West Shore conducts no business, and its sole asset is six shares of AWV stock.

Beginning in June of 1989, two months after West Shore acquired its AWV shares, Wehman issued a series of comprehensive requests on West Shore's behalf to examine certain of AWV's corporate books and records under a claim that West Shore "had no idea of the value" of its stock. In response to those requests, AWV tendered its bylaws, a list of its shareholders, certain condensed financial statements for the years 1988 and 1989, and documents showing that its stock had always been valued at $100 per share.

On June 6, 1990, West Shore filed the instant action in the circuit court of Cook County, seeking an order compelling AWV to permit West Shore to examine its books and records, including but not limited to:

"a. Consolidated financial statements of AWV and its subsidiaries for the last five years, and any other reports to AWV or its subsidiaries, prepared by AWV's independent certified public accountants;

b. All books of entry including the general ledger, general journal, cash receipts and cash disbursements journal, payroll journal and any other specialized journals and ledgers that support the consolidated financial statements, or from which such financial statements can be prepared or constructed if such consolidated statements do not exist;

c. Federal income tax returns of AWV and its subsidiaries for the last five years ***;

d. All budget information for the current and future fiscal years of AWV and its subsidiaries, and all projections made by or on behalf of AWV and its subsidiaries with respect to the future performance of AWV and/or its subsidiaries;

e. All corporate minutes for the last five years for AWV and each of its subsidiaries;

f. All records that refer or relate to any guarantees, loans, or other contractual obligations of AWV entered into or existing during the last ten years, including any leases, purchase and sale commitments (including any documents referring or relating to National Polymer Co.) and employment contracts;

g. All contracts to which AWV, or any of its subsidiaries, is a party and which are presently in force;

h. All records relating to the sale of Coburn Wilbert Vault Corp., and the sale of any other assets or investments of AWV or any of its subsidiaries during the last five years;

i. All records relating to the purchase and sale of the common capital stock of AWV during the last ten years and all records necessary to determine the present number of authorized, issued and outstanding common stock of AWV;

j. Such other records as are reasonably requested by West Shore's agents during the course of the examination."

Additionally, West Shore requested an award of attorney fees and a penalty equal to 10% of the value of its shares of AWV stock.

While this case was pending, but before trial commenced, AWV made a tender offer to purchase all 957 shares of its common stock held by minority shareholders. Included with the tender offer were consolidated financial statements for AWV's fiscal years 1990 and 1991, and the opinion of an independent financial consulting firm that the offered price of $670 per share was fair and reasonable. West Shore refused the tender offer.

This case was tried on October 13 and 14, 1992, and March 29, 30, and 31, 1993. The trial court heard the testimony of six witnesses, and the testimony of a seventh witness was submitted by stipulation. On May 24, 1993, after post-trial briefs had been submitted by the parties, the trial court issued a detailed memorandum opinion containing its findings of fact, conclusions of law, and its judgment for defendants. On June 23, 1993, West Shore filed its notice of appeal.

On July 8, 1993, while this appeal was pending, AWV and Reichle & Associates, Inc., the owner of the majority of AWV's outstanding stock, engaged in a statutory merger. Pursuant to the terms of that merger, all outstanding AWV stock owned by persons other than Reichle & Associates, including the six shares belonging to West Shore, were converted into the right to receive $1,050 per share. Pursuant to section 11.50 of the Act (805 ILCS 5/11.50 (West 1992)), as of the effective date of the merger, July 8, 1993, West Shore lost its status as an AWV shareholder, subject to its dissenter's rights under section 11.70 of the Act. 805 ILCS 5/11.70 (West 1992).

On September 3, 1993, defendants moved to dismiss this appeal arguing that because of the merger of July 8, 1993, terminating West Shore's status as an AWV shareholder, West Shore lost its standing to prosecute this appeal and the appeal was rendered moot. We accepted defendants' motion with the case and will address the merits of the motion first.

■ The purpose of the standing doctrine is to ensure that courts decide actual, specific controversies rather than abstract questions or moot issues. (*In re Marriage of Rodriguez* (1989), 131 Ill. 2d 273, 545 N.E.2d 731.) As defendants observe, a case becomes moot when events occur pending disposition on appeal which render it impossible for

the reviewing court to grant effectual relief to any party involved in the suit. *Panduit Corp. v. All States Plastic Manufacturing Co.* (1980), 84 Ill. App. 3d 1144, 405 N.E.2d 1316.

Defendants correctly argue that only a shareholder of record has the right to examine the books and records of a corporation. (805 ILCS 5/7.75 (West 1992); *Logal v. Inland Steel Industries, Inc.* (1991), 209 Ill. App. 3d 304, 568 N.E.2d 152.) West Shore does not dispute that it lost its shareholder status as of the effective date of AWV's merger. Consequently, even if we were to reverse the trial court, West Shore would no longer be entitled to examine AWV's corporate books and records. However, that circumstance does not warrant dismissal of this appeal.

■ Section 7.75(d) of the Act provides that any corporation or officer who wrongfully refuses to allow a shareholder to examine its records "shall be liable to such shareholder, in a penalty of up to ten per cent of the value of the shares owned by such shareholder, in addition to any other damages or remedy afforded him or her by law." (805 ILCS 5/7.75(d) (West 1992).) This court has held that a shareholder who is wrongfully refused access to corporate records has a cause of action against the corporation for the statutory penalty, and the action is unaffected by a subsequent sale or transfer of the stock before suit is brought. (*McCormick v. Statler Hotels Delaware Corp.* (1964), 55 Ill. App. 2d 21, 203 N.E.2d 697; *Vigran v. Hamilton* (1944), 321 Ill. App. 541, 53 N.E.2d 250.) In its complaint, West Shore requested the statutory penalty. Although we are no longer able to order an examination of AWV's books and records due to the loss of West Shore's status as a shareholder, if we were to find that the trial court erred and that defendants had wrongfully refused West Shore's examination requests, we could reverse and remand this case for a determination of the value of West Shore's six shares of stock and an award of the statutory penalty. Consequently, we find that this appeal is not moot, and deny defendants' motion to dismiss.

We now address West Shore's appeal on its merits.

In urging reversal, West Shore argues: (1) that the trial court erred in refusing to allow Wehman to testify as to West Shore's purpose in seeking to enforce its inspection rights; (2) that the court's finding that West Shore failed to sustain its burden of proving a proper purpose for requesting an examination of AWV's books and records was against the manifest weight of the evidence; and (3) that the evidence in this case did not support defendants' affirmative defenses. For the reasons which follow, we reject each of West Shore's assignments of error and affirm the judgment of the trial court.

■ Any shareholder of record is entitled to examine the books and records of his corporation upon written demand, but only for a proper purpose. (Ill. Rev. Stat. 1989, ch. 32, par. 7.75(b).) In *Doggett v. North American Life Insurance Co.* (1947), 396 Ill. 354, 358, 71 N.E.2d 686, our supreme court addressed the proper purpose requirement:

> "A *bona fide* stockholder has a legal right of inspection when sought in good faith for a specific and honest purpose, not to gratify curiosity or for speculative or vexatious purposes, providing also the interest of such applicant is as a stockholder and is lawful in character and not contrary to the interest of the corporation."

See also *Logal*, 209 Ill. App. 3d 304, 568 N.E.2d 152.

■ West Shore is correct in its assertion that when a party's state of mind is in issue, he may testify directly to it as a material fact within his personal knowledge. (See *First National Bank v. Bernius* (1984), 127 Ill. App. 3d 193, 468 N.E.2d 188; see also *Anderson v. Pifer* (1924), 315 Ill. 164, 146 N.E. 171.) In the case at bar, West Shore had a right to examine AWV's books and records for a proper purpose. (Ill. Rev. Stat. 1989, ch. 32, par. 7.75(b).) As such, West Shore's motive in requesting the examination was clearly in issue. Further, since West Shore requested to examine books and records of account, it bore the burden of establishing a proper purpose. Ill. Rev. Stat. 1989, ch. 32, par. 7.75(c).

■ Our examination of the record reveals that Wehman was not precluded from testifying as to his motive in requesting an examination of the books and records on behalf of West Shore. Indeed, he was allowed to expound upon his concerns regarding AWV's management, financial and dividend practices, and why the requested documentation was necessary to a valuation of West Shore's stock holdings. He repeatedly testified that the requests were made for the purpose of valuing West Shore's six shares of stock. It was only when West Shore's counsel inquired why it "commenced this lawsuit" that the court sustained defendants' objection. West Shore's purpose in seeking to examine AWV's books and records was the issue in controversy; its motive in filing suit was irrelevant.

We assess West Shore's manifest weight argument guided by the proposition that a reviewing court will defer to the trial judge's factual findings when they turn upon the credibility of the witnesses. It is the function of the trial judge to weigh conflicting evidence, consider that evidence in view of all the evidence in the case, and to make findings based on that evidence. *Kalata v. Anheuser-Busch Cos.* (1991), 144 Ill. 2d 425, 581 N.E.2d 656.

■ In this case, West Shore's entire manifest weight argument is nothing more than a compilation of selected passages of testimony supporting the proposition that its examination requests were made for a proper purpose, namely, to enable a valuation of its stock. While statements of purpose are relevant, a mere statement alleging a facially proper purpose is not enough; rather, the facts and circumstances of the request and the relationship of the shareholder to the corporation must be examined to ensure that the true purpose of the request is not contrary to the best interests of the corporation. (*Sawers v. American Phenolic Corp.* (1949), 404 Ill. 440, 89 N.E.2d 374; *Logal*, 209 Ill. App. 3d 304.) Our examination of the record reveals ample evidence to support the ultimate finding that West Shore failed to prove a proper purpose for its document examination requests. West Shore's sole asset consisted of its shares of AWV stock. It conducted no business apart from its AWV stock ownership, and its president was also the president of AWV's principal competitor. These facts, coupled with the breadth of West Shore's requests, the proprietary information it sought, and the testimony of its own expert witness that he had never seen nor requested the extent of information sought in order to value stock in a closely held corporation, all support the court's decision in this case. Since our examination of the record fails to reveal that a conclusion opposite that reached by the trial judge is clearly apparent, its findings and judgment are not against the manifest weight of the evidence. *Grossinger Motorcorp, Inc. v. American National Bank & Trust Co.* (1992), 240 Ill. App. 3d 737, 607 N.E.2d 1337.

■ Lastly, West Shore claims that the evidence did not support defendants' affirmative defenses. However, as West Shore admits in its brief, the trial court did not rest its judgment upon defendants' establishment of an affirmative defense. Rather, the judgment was based upon a finding that West Shore had failed in its burden of proving an essential element of its cause of action, namely, that it had a proper purpose in requesting an examination of AWV's books and records. While the facts alleged in defendants' affirmative defenses did, in large measure, bear upon West Shore's purpose, it was West Shore that bore the burden of establishing by a preponderance of the evidence that its purpose was a proper one. (Ill. Rev. Stat. 1989, ch. 32, par. 7.75(c).) Hence, whether defendants did or did not establish each of the facts in their affirmative defenses is irrelevant to the disposition of this appeal. As we found in our analysis of West Shore's manifest weight argument, ample evidence exists in the rec-

ord of the proceedings below to support the trial court's finding that West Shore failed to meet its burden in this case.

Affirmed.

JOHNSON[1] and THEIS, JJ., concur.

---

[1]Justice Johnson concurred in the disposition of this appeal before his retirement.