# Illinois Official Reports

## Appellate Court

---

### *Sunlitz Holding Co. v. Trading Block Holdings, Inc.*, 2014 IL App (1st) 133938

---

| | |
|---|---|
| Appellate Court Caption | SUNLITZ HOLDING COMPANY, W.L.L., HERBERT J. WALBERG, and ROGER S. BROWNWORTH, Plaintiffs-Appellants, v. TRADING BLOCK HOLDINGS, INC., and STEPHEN HOFFMAN, in His Capacity as Chief Executive Officer of Trading Block Holdings, Inc., Defendants-Appellees. |
| District & No. | First District, Fourth Division<br>Docket No. 1-13-3938 |
| Filed | August 14, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The dismissal of plaintiff shareholders' complaint seeking a writ of *mandamus* to compel defendants to allow plaintiffs to inspect certain books and records of defendant corporation to determine whether the officers and directors had engaged in self-dealing was reversed, notwithstanding defendants' contention that plaintiffs' request was a "fishing expedition," since plaintiffs stated with sufficient particularity the reason they sought to inspect, there was no suggestion an inspection was sought for any improper purpose, and plaintiffs sufficiently pled their right as shareholders to inspect the records. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 13-CH-14717; the Hon. Neil H. Cohen, Judge, presiding. |
| Judgment | Reversed and remanded. |

| Counsel on Appeal | Anthony C. Porcelli, Jeremy S. Unruh, and Nicole A. Poulos, all of Polsinelli PC, of Chicago, for appellants. |
| | |
| | John M. Riccione, Lisa J. Brodsky, and Amy M. Rapoport, all of Aronberg Goldgehn Davis & Garmisa, of Chicago, for appellees. |
| | |
| Panel | JUSTICE EPSTEIN delivered the judgment of the court, with opinion. Presiding Justice Howse and Justice Lavin concurred in the judgment and opinion. |

**OPINION**

¶ 1     This case presents the question of whether shareholder-plaintiffs Sunliz Holding Company, W.L.L. (Sunliz),[1] Herbert J. Walberg, and Roger S. Brownworth (collectively, plaintiffs) established a proper purpose to inspect the books and records of the defendant corporation Trading Block Holdings, Inc. (Trading Block), under section 7.75 of the Business Corporation Act of 1983 (the Act) (805 ILCS 5/7.75 (West 2012)). Plaintiffs filed a complaint seeking a writ of *mandamus* compelling defendants Trading Block and Stephen Hoffman, the chief executive officer of Trading Block (collectively, defendants), to allow plaintiffs to inspect certain books and records of Trading Block in order to determine whether Trading Block's directors and officers had engaged in self-dealing to the detriment of the corporation. Plaintiffs appeal from the trial court's grant of defendants' motion to dismiss the complaint. We conclude that plaintiffs established, with particularity, a proper purpose in seeking to review Trading Block's books and records. We reverse the trial court's dismissal of plaintiffs' complaint and remand for further proceedings.

¶ 2                                    I. BACKGROUND

¶ 3     Trading Block is an Illinois corporation offering online brokerage services for retail trading and investing in stocks, bonds, and exchange-traded funds. Trading Block owns two subsidiaries: AOS Inc. and MoneyBlock. Plaintiffs are shareholders of Trading Block.

¶ 4     On April 1, 2013, plaintiffs, through their attorney, sent a letter to Hoffman, the chief executive officer of Trading Block, requesting an opportunity to review certain records of Trading Block and its subsidiaries: (1) the articles of incorporation, bylaws, shareholder agreements, and any amendments to those documents; (2) agendas and minutes for any board of directors' meetings occurring from January 1, 2011 to present; (3) resolutions of the board of directors from January 1, 2011 to present; (4) share certificates; (5) current and original

_____

[1]Plaintiffs assert that "Sunliz" is the correct spelling. The spelling, "Sunlitz," in the caption resulted from a typographical error in plaintiffs' complaint.

capitalization tables, and a list and explanation for any changes to the capitalization table; (6) any contracts between Trading Block and its officers and directors; (7) financial statements, including balance sheets, income statements, statements of cash flow, and profit and loss statements, from January 1, 2011 to present; (8) the general ledger and QuickBooks files; (9) accounts payable and receivable from January 1, 2011 to present; (10) federal and state income tax returns from January 1, 2011 to present; (11) marketing and private placement memoranda used to raise capital; (12) all reports filed with any regulatory agencies; (13) any correspondence with the Financial Industry Regulatory Authority, Security and Exchange Commission, and Chicago Board Options Exchange from January 1, 2011 to present; (14) all offer letters sent to brokers from January 1, 2011 to present; (15) "[a]ll documents and analyses relating to and/or supporting the decision by the TradingBlock [*sic*] Board of Directors to propose shareholder action related to adoption of the *** 2012 Stock Option Plan in approximately June[ ] 2012"; and (16) "[a]ll documents and analysis [*sic*] related to and/or supporting Trading Block's Offer to Exchange Shares of Series A Preferred Stock for Secured Promissory Note at $1.10 Per Share, as detailed in the correspondence dated approximately December 26, 2012 to the Holders of Series A Preferred Stock and as mentioned in TradingBlock's [*sic*] 2012 year-end summary letter e-mailed to all shareholders approximately December 18, 2012." Plaintiffs sought these books and records "to determine the financial condition of the company, the character of the management of the company, and whether the company's financial practices [we]re appropriate."

¶ 5    On April 30, 2013, defendants, through their attorney, responded with a letter stating that, "[w]ithout more, neither the character of the management of the Company nor a general inquiry regarding the Company's 'financial practices' is a proper purpose for a Section 7.75 request." The letter characterized plaintiffs' request for "a broad range of records" as a " 'fishing expedition.' " Defendants enclosed with the letter copies of Trading Block's balance sheets and profit and loss statements for the fiscal years that ended December 31, 2012 and December 31, 2011. The letter also gave permission for Walberg and Brownworth to share "the package of information that was provided to the Company's preferred shareholders in connection with the exchange offer recently undertaken by the Company" with Sunliz.

¶ 6    On May 17, 2013, plaintiffs responded with another letter from their attorney requesting an opportunity to review Trading Block's books and records. Plaintiffs asserted that their purpose in making the request was:

> "to understand fully and assess the financial condition of TradingBlock, [*sic*] how the company is being managed, whether the company's financial practices are appropriate, and whether there has been any self-dealing by TradingBlock's [*sic*] management and/or members of the Board of Directors that has had a negative impact on the company as a whole or shareholders, in particular."

Plaintiffs referenced the board of directors' approval of a stock option plan in 2012 that "resulted in the dilution of both common and preferred stock to the detriment of common stock shareholders and preferred stock shareholders." Plaintiffs asserted that the stock option plan was approved by the directors for their own benefit, not for the benefit of Trading Block or its shareholders.

¶ 7    The letter noted that the financial information that defendants provided with their April 30, 2013 response "suggest[ed] that the company is being managed in the self-interest of

management rather than for the benefit of the shareholders." Plaintiffs noted that these records showed that revenues significantly increased each year, but the company continued to show a net loss due to unspecified " 'other operating expenses.' " Plaintiffs also noted that these records showed increases in commissions receivable at a time the board members of Trading Block were doing business with Trading Block, suggesting that the board members were not making timely payments to the corporation. Plaintiffs argued that these matters "require[d] additional explanation and review." Plaintiffs expressed concern that Trading Block was being used "as a piggy bank for the insiders and the Board of Directors." Plaintiffs requested an opportunity to review all of the records listed in its April 1, 2013 letter by May 30, 2013.

¶ 8        On May 31, 2013, defendants' attorney sent plaintiffs the following response:

> "We are in receipt of your letter dated May 17, 2013, demanding *** access to a wide range of books and records of [Trading Block] and its subsidiaries. We are reviewing your requests with Trading Block's management and will respond to your letter when we have completed our analysis."

Plaintiffs did not receive another response before the instant action was initiated.

¶ 9        On June 13, 2013, plaintiffs filed a complaint for a writ of *mandamus*, asking that the court compel defendants to comply with their request and that the trial court impose statutory penalties. The complaint averred that the June 2012 stock option plan diluted the value of Trading Block's shareholders, that Trading Block had not issued dividends for "the past several years," that Trading Block's revenues increased in the preceding three years but it continued to report a net loss to shareholders, and that plaintiffs believed that members of Trading Block's board of directors had not made timely payments to the corporation. Plaintiffs alleged that defendants had refused to allow them to inspect Trading Block's books and records in order "to determine the financial condition of the Corporation, the character of the management of the Corporation, and whether the Corporation's financial practices are appropriate." Plaintiffs attached copies of the correspondence between them and defendants as exhibits.

¶ 10        On September 6, 2013, defendants filed a motion to dismiss the complaint pursuant to section 2-615 of the Code of Civil Procedure. 735 ILCS 5/2-615 (West 2012). Defendants' motion asserted that plaintiffs failed to state a proper purpose for inspecting Trading Block's books and records and that the breadth of their request amounted to an impermissible " 'fishing expedition.' "

¶ 11        On November 15, 2013, the circuit court granted defendants' motion to dismiss. The circuit court found that plaintiffs' April 1, 2013 demand letter "failed to identify any particular purpose and Defendants were not required to allow any inspection of Trading Block's books and records." The court also found that plaintiffs' May 17, 2013 letter sought access to records "that went far beyond any possible relevance to the 2012 Stock Option Plan," and that plaintiffs' "speculation regarding possible self-dealing [did not] support the existence of a proper purpose." Plaintiffs appealed.

¶ 12                                                     II. ANALYSIS

¶ 13        Plaintiffs contend that they established a proper purpose supporting their request to inspect Trading Block's books and records. Defendants contend that plaintiffs failed to

establish, with particularity, a proper purpose in their letters requesting access to Trading Block's books and records. For the reasons that follow, we agree with plaintiffs.

¶ 14    As a motion to dismiss pursuant to section 2-615 of the Code of Civil Procedure challenges the legal sufficiency of a complaint on its face, we review the grant or denial of such a motion *de novo*. *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 429 (2006). "In reviewing the sufficiency of a complaint, we accept as true all well-pleaded facts and all reasonable inferences that may be drawn from those facts." *Id.* "We also construe the allegations in the complaint in the light most favorable to the plaintiff." *Id.* "Exhibits attached to a complaint are considered part of the pleading for every purpose, including the decision on a motion to dismiss." *Dratewska-Zator v. Rutherford*, 2013 IL App (1st) 122699, ¶ 14.

¶ 15    Section 7.75 of the Act provides that a corporation's shareholders are entitled to inspect "the corporation's books and records of account, minutes, voting trust agreements filed with the corporation and record of shareholders, and to make extracts therefrom, but only for a proper purpose." 805 ILCS 5/7.75(b) (West 2012). "In order to exercise this right, a shareholder must make written demand upon the corporation, stating with particularity the records sought to be examined and the purpose therefor." *Id.* Section 7.75 further provides that, "[i]f the corporation refuses examination," the shareholder may seek a writ of *mandamus* to compel compliance with the Act. 805 ILCS 5/7.75(c) (West 2012). The shareholder bears the burden of establishing a proper purpose if the shareholder seeks to inspect the corporation's books and records of account, but the corporation bears the burden of proving a lack of a proper purpose if the shareholder seeks to inspect "minutes or the record of shareholders or a voting trust agreement." *Id.*

¶ 16    The Illinois Supreme Court has stated that a shareholder has a proper purpose in requesting records where the request is made "in good faith for a specific and honest purpose, not to gratify curiosity or for speculative or vexatious purposes, providing also the interest *** is as a stockholder and is lawful in character and not contrary to the interest of the corporation." *Doggett v. North American Life Insurance Co. of Chicago*, 396 Ill. 354, 358-59 (1947); see also *West Shore Associates, Ltd. v. American Wilbert Vault Corp.*, 269 Ill. App. 3d 175, 180 (1994). Provided that a shareholder can establish a proper purpose, that "shareholder is legitimately entitled to know anything and everything which the records, books and papers of the company would show so as to protect his interest." *Weigel v. O'Connor*, 57 Ill. App. 3d 1017, 1025 (1978).

¶ 17    Plaintiffs cite *Weigel* in support of their argument that they established a proper purpose. In *Weigel*, the shareholder wrote a letter to the corporation, asking to review numerous records to determine the value of his shares, the nature and amount of corporate expenditures, the source of corporate revenues, and the compensation paid to the corporation's officers and directors. *Id.* at 1022. At trial, the shareholder testified that he had received information that the corporation's officers used corporate assets to enrich themselves to the detriment of the corporation. *Id.* at 1023. In concluding that the shareholder had established a proper purpose, the *Weigel* court noted that "proof of actual mismanagement or wrongdoing is not necessary. Good faith fears of mismanagement are sufficient." *Id.* at 1025. The court also stressed that "[a] single proper purpose is sufficient to satisfy the statutory requirement." *Id.* at 1027.

¶ 18    Defendants liken plaintiffs' request in this case to that in *Logal v. Inland Steel Industries, Inc.*, 209 Ill. App. 3d 304 (1991). In *Logal*, the shareholder, an employee of the corporation, sought access to the corporation's books and records in order to determine whether the

corporation had closed one of its facilities due to "fraud or gross mismanagement." *Id.* at 306. The shareholder asserted that the closure resulted in the corporation being less competitive in the steel industry. *Id.* at 306-07. Although recognizing that revealing fraud or gross mismanagement may constitute a proper purpose, the *Logal* court found that the shareholder had failed to state a proper purpose because he "allege[d] no circumstances that justif[ied] [his] assertion that the decision to close the facility amounted to fraud or gross mismanagement." *Id.* at 308. The court characterized the shareholder's request as an attempt "to satisfy his curiosity as to recent events that he ha[d] witnessed or heard about as an employee." *Id.* at 308-09.

¶ 19    In this case, plaintiffs' request more closely resembles the proper purpose of the shareholder in *Weigel* than the mere curiosity of the shareholder in *Logal*. In their April 1, 2013 letter, plaintiffs indicated that they sought access to Trading Block's books and records "to determine the financial condition of the company, the character of the management of the company, and whether the company's financial practices [we]re appropriate." In their May 17, 2013 letter, plaintiffs expressed concerns that Trading Block's directors and officers, who were doing business with the corporation at the time, were treating the corporation as a personal "piggy bank" by engaging in insider deals to the detriment of the corporation. Plaintiffs referenced a June 2012 stock option plan passed by the board of directors that "resulted in the dilution of both common and preferred stock to the detriment of common stock shareholders and preferred stock shareholders." Plaintiffs also noted the possibility that Trading Block's directors were falsely reporting losses and failing to make payments to the corporation as part of their dealings with the corporation. These purposes mirror the alleged mismanagement the shareholder in *Weigel* sought to investigate. Unlike the shareholder in *Logal*, plaintiffs did not merely second-guess a corporate decision; they expressed concerns regarding possible self-dealing by Trading Block's directors and board members based upon the adoption of the stock option plan and information contained in some of Trading Block's financial records. Nothing in the record suggests that plaintiffs had a vexatious purpose in making these requests or that they were simply satisfying their curiosity in seeking access to Trading Block's books and records. To the contrary, plaintiffs' demands showed that they possessed a good-faith fear of mismanagement, which they sought to confirm or refute by examining Trading Block's books and records. Assuming the truth of these allegations, plaintiffs stated a proper purpose under the Act.

¶ 20    Defendants maintain that *Weigel* does not apply because it was decided prior to the passage of the 1983 Act, when the requirement that the shareholder state his proper purpose "with particularity" was added. Pub. Act 83-1025 (eff. July 1, 1984) (adding Ill. Rev. Stat. 1985, ch. 32, ¶ 7.75 (now 805 ILCS 5/7.75)). We disagree. This court has continued to rely upon *Weigel*'s interpretation of a proper purpose following the adoption of the Act. *E.g.*, *Corwin v. Abbott Laboratories*, 353 Ill. App. 3d 848, 850-51 (2004) (citing *Weigel* and noting that, in passing the Act, the legislature "let *Weigel* stand without changing or clarifying" it); *Hagen v. Distributed Solutions, Inc.*, 328 Ill. App. 3d 132, 143 (2002) (finding that *Weigel* remained authoritative because "the plaintiff in *Weigel* had 'made a specific demand for designated documents' " (quoting *Weigel*, 57 Ill. App. 3d at 1028)); *Logal*, 209 Ill. App. 3d at 308 (citing *Weigel* for the proposition that "a shareholder's good-faith request to inspect corporate books and records in order to reveal fraud or gross mismanagement may constitute a proper purpose in Illinois"). We thus reject defendants' contention that *Weigel* is obsolete.

¶ 21    Even assuming that plaintiffs had to allege facts beyond those asserted by the shareholder in *Weigel*, we find that plaintiffs stated their purpose "with particularity" as required by section 7.75. 805 ILCS 5/7.75(b) (West 2012). Plaintiffs specified that they were concerned with self-dealing by Trading Block's directors and officers because of the June 2012 stock option plan and financial documents showing that the corporation increased its revenue but continued to report a loss due to unspecified expenses. The plaintiffs also noted that they suspected the corporation's directors and officers of failing to make timely payments to the corporation because of an increase in the commissions receivable in those financial statements. The plaintiffs thus supported their requests by citing to specific facts contained in certain documents defendants had provided. Plaintiffs have established, with particularity, a proper purpose in requesting access to Trading Block's books and records.

¶ 22    Defendants argue that plaintiffs' demand was not stated "with particularity" because they failed to identify the directors allegedly engaged in self-dealing and failed to specify what business dealings with Trading Block may have required the directors to pay commissions. 805 ILCS 5/7.75(b) (West 2012). Defendants' argument places too heavy a burden on plaintiffs. This court has stated that the particularity requirement of section 7.75 is " 'a relative one, turning on the degree of knowledge that a movant in a particular case has about the documents he requests.' " *Hagen*, 328 Ill. App. 3d at 144 (quoting *Parsons v. Jefferson-Pilot Corp.*, 426 S.E.2d 685, 691 (N.C. 1993)). In order to satisfy the particularity requirement with respect to the documents a shareholder seeks to review, the shareholder's request must " 'be sufficient to apprise a man of ordinary intelligence what documents are required,' " depending on the facts and circumstances of each case. *Hagen*, 328 Ill. App. 3d at 144 (quoting *Parsons*, 426 S.E.2d at 691). We find that this interpretation of the phrase, "with particularity," should similarly apply to the requirement that a shareholder state his purpose with particularity. See *Maksym v. Board of Election Commissioners*, 242 Ill. 2d 303, 322 (2011) (" '[W]here the same, or substantially the same, words or phrases appear in different parts of the same statute they will be given a generally accepted and consistent meaning, where the legislative intent is not clearly expressed to the contrary.' " (quoting *Moran v. Katsinas*, 16 Ill. 2d 169, 174 (1959))).

¶ 23    In this case, plaintiffs have not yet reviewed records to confirm or deny their fears that Trading Block has been mismanaged. Yet defendants would have plaintiffs state the details of the alleged mismanagement, which plaintiffs are not certain has even occurred. Plaintiffs do not need to establish "actual mismanagement or wrongdoing ***. Good faith fears of mismanagement are sufficient." *Weigel*, 57 Ill. App. 3d at 1025. Plaintiffs specified that they sought records to determine whether the June 2012 stock option plan, unidentified expenses, and increase in commissions receivable were due to mismanagement. Plaintiffs' statements were sufficiently particular to notify defendants of the reason they sought access to Trading Block's books and records.

¶ 24    Defendants also contend that the scope of plaintiffs' requested inspection demonstrates that they had no proper purpose in making their request, citing *West Shore Associates, Ltd. v. American Wilbert Vault Corp.*, 269 Ill. App. 3d 175 (1994). In *West Shore*, the shareholder appealed from a bench trial in which the trial court ruled that the shareholder lacked a proper purpose in seeking to review the corporation's books and records. *Id.* at 178. The shareholder averred that it had a proper purpose in making its request because it sought to ascertain the value of its stock. *Id.* at 177. The *West Shore* court found that the trial court's ruling was not

against the manifest weight of the evidence, highlighting evidence that the shareholder may have been seeking information for a purpose detrimental to the corporation:

> "[T]he record reveals ample evidence to support the ultimate finding that [the shareholder] failed to prove a proper purpose for its document examination requests. [The shareholder's] sole asset consisted of its shares of [the corporation's] stock. It conducted no business apart from its *** stock ownership, and its president was also the president of [the corporation's] principal competitor. These facts, coupled with the breadth of [the shareholder's] requests, the proprietary information it sought, and the testimony of its own expert witness that he had never seen nor requested the extent of information sought in order to value stock in a closely held corporation, all support the court's decision in this case." *Id.* at 181.

¶ 25 We find that defendant's reliance on *West Shore* is misplaced. *West Shore* was an appeal from a trial and the appellate court applied a manifest weight of the evidence standard to the trial court's finding that plaintiffs lacked a proper purpose. Here, we review the trial court's dismissal of plaintiffs' complaint *de novo* and must draw all reasonable factual inferences in plaintiffs' favor. *Marshall*, 222 Ill. 2d at 429. Unlike *West Shore*, therefore, we owe no deference to the trial court's determination that plaintiffs lacked a proper purpose. More importantly, this case lacks the evidence of an improper purpose present in *West Shore*. The shareholder in *West Shore* was closely tied to a competitor of the corporation and conducted no business other than owning the corporation's stock, suggesting that the shareholder's request may have been an effort to obtain information to the detriment of the corporation. In this case, the record does not suggest any reason why plaintiffs would seek to inspect Trading Block's books or records in order to disadvantage Trading Block. We thus find that *West Shore* is distinct from this case.

¶ 26 The breadth of plaintiffs' requested inspection does not compel us to find that their purpose was improper. Critically, this court has "held that once a proper purpose has been established, 'the shareholder's right [to inspect] extends to *all* books and records necessary to make an intelligent and searching investigation' and 'from which he can derive any information that will enable him to better protect his interests.' " (Emphasis in original and internal quotation marks omitted.) *Corwin*, 353 Ill. App. 3d at 850 (quoting *Weigel*, 57 Ill. App. 3d at 1027); see also *Hagen*, 328 Ill. App. 3d at 143 (same). Having established a proper purpose, plaintiffs were entitled to access any and all documents necessary for that inquiry. Plaintiffs' April 1, 2013 letter limited the scope of their inquiry mostly to information dating back to January 1, 2011. Plaintiffs expressly listed those documents they sought to inspect. Defendant has not explained how the scope of plaintiffs' request proves an improper motive. Viewing plaintiffs' request in a light most favorable to them, we cannot conclude that the scope of plaintiffs' request demonstrated that they had an improper, vexatious purpose.

¶ 27 Defendants also cite *Thomas & Betts Corp. v. Leviton Manufacturing Co.*, 681 A.2d 1026 (Del. 1996), in support of their position that the documents requested by plaintiffs far exceeded any proper purpose. In that case, the Delaware Supreme Court affirmed a trial court order limiting a shareholder's inspection of corporate books and records to those documents the trial court found relevant to the shareholder's stated purpose. *Id.* at 1035. This court, however, has expressly rejected the notion that a trial court should circumscribe a shareholder's review of a corporation's books and records provided that the shareholder

establishes a proper purpose. See *Hagen*, 328 Ill. App. 3d at 143 ("The court in *Weigel* decided that it was improper for the *trial court* to circumscribe the shareholder's right to examine corporate books and records and to allow only piecemeal inspection when the record indicated that the shareholder had presented sufficient evidence of a proper purpose." (Emphasis in original.)). We decline to follow Delaware case law in light of the relevant Illinois precedent on this issue.[2] See *In re Estate of Walsh*, 2012 IL App (2d) 110938, ¶ 45 ("Illinois courts do not look to the law of other states when there is relevant Illinois case law available.").

¶ 28    Defendants also briefly argue that plaintiffs failed to allege that they were shareholders of Trading Block's subsidiaries and thus have failed to demonstrate their entitlement to review those subsidiaries' books and records. Defendants did not raise this argument before the trial court. They have forfeited it. See *Haudrich v. Howmedica, Inc.*, 169 Ill. 2d 525, 536 (1996) ("It is well settled that issues not raised in the trial court *** may not be raised for the first time on appeal."); *Valdovinos v. Tomita*, 394 Ill. App. 3d 14, 21 (2009) (finding that defendants forfeited arguments regarding the sufficiency of the complaint where they did not raise them in their motion to dismiss). Even ignoring defendants' forfeiture, plaintiffs' two demand letters and complaint each allege that they are shareholders of Trading Block. We must take these allegations as true for purposes of this appeal and construe them in the light most favorable to plaintiffs. *Marshall*, 222 Ill. 2d at 429. Nothing in the complaint or attached exhibits indicates that plaintiffs were not entitled to review Trading Block's subsidiaries' records, and defendants do not specify which documents plaintiffs should not be entitled to review. We thus reject defendants' claim that plaintiffs failed to plead their shareholder status.

¶ 29    Taking plaintiffs' allegations as true, we conclude that plaintiffs have sufficiently pled their entitlement to inspect records under section 7.75. We note that our decision does not preclude defendant from presenting evidence that plaintiffs lacked a proper purpose or that plaintiffs' request has exceeded its stated purpose in subsequent proceedings. Rather, we simply find that, assuming the truth of plaintiffs' allegations, plaintiffs have sufficiently pled a proper purpose in requesting to inspect Trading Block's books and records. We thus reverse the trial court's dismissal of plaintiffs' *mandamus* complaint and remand for further proceedings consistent with this opinion.

¶ 30                                    III. CONCLUSION

¶ 31    For the reasons stated, we reverse the trial court's dismissal of plaintiffs' complaint and remand for further proceedings.

¶ 32    Reversed and remanded.

---

[2]We also note that defendants' contention that the Act was designed to "parallel" Delaware law is not supported by the Act's legislative history. 83d Ill. Gen. Assem., House Proceedings, Oct. 20, 1983, at 70 (statements of Representative McCracken) (noting that the Act represented a "compromise" between the management-friendly Delaware statute and other jurisdictions' provisions designed to protect shareholders).