Benjamin Vigran and Adella Mae Denton, Appellees,
v. Walter Hamilton et al., Appellants.

Gen. No. 42,350.

Heard in the second division of this court for the first district at the October term, 1942. Opinion filed Febuary 10, 1944. Rehearing denied March 9, 1944.

WALTER HAMILTON, of Chicago, for appellants.

PAUL H. LEFFMANN and KAGAN & TUROFF, both of Chicago, for appellees; LEE L. TUROFF, of Chicago, of counsel.

Mr. Justice Sullivan delivered the opinion of the court.

This action was brought by plaintiffs Benjamin Vigran and Adella Mae Denton, against defendants Walter Hamilton, Charles F. Henry and Claridge Apartments Company, to recover the penalty provided by statute because of the alleged wrongful refusal of the defendants to comply with the demand of the plaintiff shareholders in the defendant corporation for permission to examine the books and records of said corporation. The case was tried by the court without a jury. Judgment was entered in favor of plaintiff Benjamin Vigran for $80 against each of the defendants and judgment was entered in favor of plaintiff Adella Mae Denton for $200 against each of the defendants. Defendants appeal from said judgments.

The complaint alleged in substance that plaintiff, Benjamin Vigran, was the legal, equitable and registered holder and owner of 20 common shares of no par value of defendant Claridge Apartments Company; that plaintiff Adella Mae Denton, was the legal, equitable and registered holder and owner of 50 such shares of said corporation; that both plaintiffs had owned said shares continuously for more than six months immediately preceding January 30, 1940; that both plaintiffs continued to be the legal, equitable and registered holders and owners of said shares continuously until June 3, 1940 and thereafter; that defendant Claridge Apartments Company is an Illinois corporation; that defendant Charles F. Henry had been continuously the president, treasurer and a director of the defendant corporation since on or about November 15, 1937, and defendant Walter Hamilton had been secretary, registered agent and a director of the defendant corporation during the same period; that on February 16, 1940 plaintiff Vigran made demand by his attorney on the three defendants that he be permitted, at any reasonable time

or times, "to examine the books and records of account and the minutes of proceedings of the Shareholders and Directors, and the record of the Shareholders of the defendant, Claridge Apartments Company, and to make extracts therefrom"; that he informed defendants that "it was his purpose to obtain a list of the shareholders of the defendant corporation so as to be able to communicate with such shareholders and to advise them concerning the transactions and proceedings at a Special Meeting of the Shareholders of said corporation convened on January 30, 1940, and to obtain from the books and records of the corporation information and extracts concerning the manner in which its business had been conducted and transactions in which it had engaged"; that said demand was made at the registered office of the defendant corporation in the City of Chicago; that defendants wrongfully refused said demand and denied Vigran and his agent and attorney the right to examine or to make extracts from the aforesaid books and records of the defendant corporation at any time or for any purpose; that on February 20, 1940 plaintiff, Adella Mae Denton, made a similar demand for the same purpose which was likewise refused; that the value of the shares of Claridge Apartments Company on February 1, 1940 and thereafter, was and still is $40 a share; and that section 45 of the Business Corporation Act (par. 157.45, ch. 32, Ill. Rev. Stat. 1939 [Jones Ill. Stats. Ann. 32.045]), provides in part as follows:

"Any officer, or agent, or a corporation which shall refuse to allow any such shareholder, or his agent or attorney, so to examine and make extracts from its books and records of account, minutes,.and record of shareholders, for any proper purpose, shall be liable to such shareholder in a penalty of ten per cent of the value of the shares owned by such shareholder, in addition to any other damages or remedy afforded him by law."

The complaint then alleged that each of the defendants was liable to each of the plaintiffs to the extent of the statutory penalty and asked that judgment for $80 be entered in favor of plaintiff Vigran against each defendant and that judgment for $200 be entered in favor of plaintiff Denton against each defendant.

Defendants filed a joint and several 14 page answer. The major portion of the allegations contained therein were not germane to any issue presented by plaintiffs' complaint and contained no defense to the cause of action stated in said complaint. On plaintiffs' motion 18 of the 24 paragraphs of the answer were stricken. The unstricken portions thereof denied that plaintiffs or either of them were entitled through their agents or attorneys to examine the books and records of the defendant corporation at the times the respective demands were made, or that such demands were made for a proper purpose or that "said 70 shares of stock were worth more than . . . $40 per share on February 1, 1940."

So that the allegations of the answer set forth in the next paragraph may be understood, it is necessary to state that a complaint in equity had been filed on behalf of plaintiff Vigran by Attorneys Turoff and Leffmann and another complaint had been filed by one Greenberg to enjoin the first proposed sale of its property by the defendant corporation.

It was then alleged that "at the time said two demands were made, negotiations were still pending for settlement of said two suits and said settlement was consummated thereafter in spite of the efforts of said Turoff and said Leffmann to block it by stirring up the spirit of contest in said Hamilton, said Henry and said Claridge Apartments Company, by said demands; that thereafter said suits were fully settled by the said Claridge Apartments Company holding proper director's and shareholder's meetings for voluntarily selling all its assets to Claridge Corporation, an Illinois corpo-

ration, for the sum of $126,120, and assumption of all liabilities of said Claridge Apartments Company, with the approval and order of the circuit court of Cook county and for dissolution voluntarily of said Claridge Apartments Company; that at said shareholders meeting, 72 per cent of all the issued and outstanding shareholders of said Claridge Apartments Company, including the plaintiffs herein, voted for said sale and dissolution; that pursuant to such director's and shareholder's meetings and the order of the circuit court of Cook county, quitclaim deed and bill of sale of all the assets of Claridge Apartments Company were executed and delivered to said Claridge Corporation and said Claridge Corporation assumed and agreed to pay all the liabilities of Claridge Apartments Company and delivered to Claridge Apartments Company its agreement to indemnify Claridge Apartments Company against any claim made against it; that it was part of said settlement that all differences between all the clients of the attorneys settling involved in this matter, including those of these plaintiffs, were settled and discharged; that thereafter plaintiff, Ben Vigran, was paid the sum of Eight Hundred Dollars by said Claridge Apartments Company in full of his distributive share in all the assets of Claridge Apartments Company, including his claim for Eighty Dollars he now sues for and his claim herein was fully settled and discharged and said Good & Company was paid the sum of Two Thousand Forty Dollars in full of the distributive share of Good & Co., and the equitable owner of said 50 shares and one other share in all the assets of said Claridge Apartments Company, including the claim herein of Two Hundred Dollars of said Plaintiff, Adella May Denton and said claim of said Denton for Two Hundred Dollars herein was fully settled and discharged.''

Defendants' counsel has filed a most confusing brief in this court. Error is assigned on page 5 of said

brief as to the order of the trial court sustaining plaintiffs' motion to strike the paragraphs of defendants' answer heretofore indicated. This alleged error is then abandoned and the following is listed on page 9 of the brief among defendants' points:

"By order of Judge FISHER entered November 1, 1940, pars. 2, 4, 6, 7, 8, 9, 10, 13, 14, 15, 16, 17, 18, 19, 20, 22, 23, and 24 of the joint and several answer of the defendants were stricken. Defendants stood by these stricken paragraphs . . . . The allegations of these stricken paragraphs well pleaded are admitted for the purposes of this appeal."

The argument made in support of this "point" merely reiterates what is said in the point itself and no further mention is made of the alleged error of the trial court in striking said paragraphs. Then counsel proceeds throughout defendants' 58 page brief to discuss and argue as admitted facts the matters alleged in the stricken paragraphs of defendants' answer. Counsel certainly misapprehends the rule he seeks to apply to the stricken paragraphs of the answer. It is the rule that facts well pleaded in any pleading must be considered as true for the purpose of the hearing on a motion to strike such pleading. Inasmuch as the cause proceeded to trial on the issues joined by the unstricken portions of defendants' answer to plaintiffs' complaint, the fact that defendants "stood by these stricken paragraphs" amounted to nothing more than an objection by them to the ruling of the court thereon, so that such interlocutory ruling might be reviewed on an appeal from an adverse judgment, if such was entered. If defendants had really sought a review by this court of the alleged error of the trial court in striking said paragraphs of their answer and such point was argued in their brief, instead of being abandoned, we would have had to consider as true the well pleaded facts in the stricken paragraphs of

their answer, but only for the purpose of passing upon the propriety of the order sustaining plaintiffs' motion to strike such paragraphs. The effect of the order striking portions of defendants' answer was to entirely exclude from consideration upon the trial of the case the matters alleged in such portions. It would indeed be a strange rule that required proof of matters not stricken and that obviated proof of matters which were stricken.

Defendant Charles F. Henry was president, treasurer and a director of defendant corporation from 1937 until said corporation was dissolved June 30, 1940. Defendant Walter Hamilton was secretary, registered agent and a director of defendant corporation during the same period.

That plaintiff Vigran owned 20 shares of stock in the defendant corporation on February 16, 1940 and for more than six months prior thereto was clearly shown by the evidence. That Vigran made a written demand on the individual defendants on February 16, 1940 to inspect the books and records of defendant corporation is admitted.

That plaintiff Denton owned 50 shares of stock in defendant corporation on February 20, 1940 and for more than six months prior thereto was clearly shown by the evidence.

Attorney Turoff testified that on February 20, 1940 he and Attorney Leffmann made separate written demands on behalf of plaintiff Denton on defendants Henry and Hamilton to inspect the books and records of defendant corporation. Henry did not deny that such demand was made on him. Hamilton at first denied that such written demand was made on him but finally admitted that an oral demand was made on him on behalf of plaintiff Denton on February 20, 1940.

That defendants refused to permit the attorneys for Vigran and Denton to examine the books and records

of the defendant corporation and to make extracts therefrom in response to plaintiffs' demands is admitted.

The demands on defendant corporation by the attorneys for both plaintiffs for permission to inspect its books and records were sufficiently made. These demands were made by leaving copies thereof with or presenting same to Charles F. Henry and Walter Hamilton, who were president and secretary respectively of said corporation, and in control of its books and records.

Defendants' answer did not directly deny that the value of the stock of defendant corporation was at least $40 a share as alleged in plaintiffs' complaint. In any event it was sufficiently shown that the value of said stock was $40 a share.

Therefore the only question left for determination is whether the motives prompting plaintiffs' demands were proper. The record discloses that the sole assets of defendant corporation were an apartment building and the fixtures, furniture and other personal property contained therein (hereinafter for convenience sometimes referred to collectively as the defendant corporation's apartment building); that its stockholders, at a meeting held January 30, 1940, approved a recommendation of its directors that said apartment building be sold for $90,000, although two other bids were submitted, one for $110,000 and the other for $125,000; that the sale of the property at $90,000 would have netted approximately $31 a share to the stockholders; that shortly after said stockholders' meeting plaintiff Vigran and one Greenberg filed separate complaints in equity to enjoin the defendants herein from selling the property for $90,000, charging that said sum was an inadequate and unfair sale price for the property; that thereafter said two suits in equity were consolidated; that negotiations ensued between the parties to the consolidated suit for a settlement of said

suit; that any settlement thereof depended entirely upon the securing of a purchaser for the property at a higher and more adequate price; that while the negotiations for settlement were pending the demands of plaintiffs herein were made on defendants on February 16, 1940 and February 20, 1940; that on February 26, 1940 an offer was made by the Claridge Corporation by its president, Howard D. Henry, to purchase the property for $126,120 and other considerations; that this offer was made by the same corporation whose original bid of $90,000 was approved by the stockholders at the meeting of January 30, 1940 on the recommendation of the directors of defendant corporation; that on petition of the defendant corporation in the consolidated proceeding, filed April 2, 1940, the chancellor entered an order April 5, 1940, which, after finding that the increased offer made by the Claridge Corporation was reasonable and proper and that it would net the stockholders of the defendant corporation $40 a share, directed said defendant corporation to accept the increased offer.

The mere recital of the foregoing facts demonstrates conclusively that plaintiffs' motives and purposes in making their demands to inspect the books and records of the defendant corporation were proper and that under the circumstances they were entirely justified in making said demands. The individual defendants, in addition to being directors, held between them the offices of president, treasurer and secretary of the defendant corporation. The amount of stock they each owned in said corporation does not appear but it is fair to assume that, since they were the principal officers thereof, they in large measure influenced and controlled the conduct of its affairs. It is stated in plaintiffs' brief and not denied that Howard D. Henry, the president of Claridge Corporation, which made both the original purchase offer of $90,000 and the later increased offer of $126,120, is a brother of de-

fendant Charles F. Henry, who was president and treasurer of defendant corporation. There can be no question that the acceptance of the original offer of $90,000 by the directors of defendant corporation and their recommendation of its approval by the stockholders and its subsequent approval at the stockholders' meeting on January 30, 1940, constituted an attempt to foist a deal on the shareholders that would have meant a loss to them of thousands of dollars. The $90,000 purchase price offer stands admitted on the record before us as being unfair and inadequate. It was only through the vigilance of plaintiffs and a few other stockholders and their attorneys, who instituted the proceedings to enjoin the sale, that said attempt was thwarted. As has been seen, as a result of the filing of said proceedings, the original $90,000 bidder was compelled to bid $126,120 in order to secure this property, thereby netting the stockholders of defendant corporation $40 a share instead of $31 a share, which they would have received if the attempt to sell the property for $90,000 had been successful. When the sale at $90,000 was recommended by the directors of defendant corporation and approved at a meeting of its stockholders January 30, 1940, it is small wonder that the suspicions of plaintiffs were aroused. They proceeded immediately to file their complaints to enjoin the sale and thereafter to demand their right to examine the books and records of defendant corporation for the stated purpose, among others, of ascertaining the names and addresses of all the shareholders so that they might communicate with them concerning the proposed sale of the property at the aforementioned inadequate price and invite them to become parties to and participate in the proceedings already instituted to enjoin the sale. Under the circumstances the purposes of plaintiffs' demands were not only proper but the motives that prompted them were commendable.

Defendants urge that the negotiations for settlement of the consolidated suit were progressing favorably at the times the respective demands were made and that therefore plaintiffs' purpose in making their demands was improper and that the only purpose of their attorneys was to incite litigation so that they might procure large and excessive legal fees for themselves. It appears to us that the individual defendants, one of whom is the attorney for all the defendants herein, and the other, as already stated, is a brother of the president of the purchasing corporation, take this position to divert attention from their own conduct in connection with the acceptance of the original $90,000 bid for the purchase of defendant corporation's apartment building. After they had received information concerning the acceptance of this bid, plaintiffs and their attorneys had the right to examine the books and records of defendant corporation and to secure the names and addresses of all its stockholders, regardless of whether or not negotiations for settlement of the consolidated suit were progressing favorably. When the demands were made there was no certainty that a settlement would be reached and it may well be that plaintiffs' demands accelerated the conclusion of the settlement that was finally reached.

In connection with their contention that plaintiffs' demands were made for an improper purpose, defendants stress the unreasonableness of the fees requested and allowed plaintiffs' counsel in the consolidated suit. Plaintiffs' counsel in the two suits that were consolidated were allowed $3,000 in fees between them. There is certainly nothing unfair or unreasonable about this allowance, when it is considered that the stockholders were benefited to the extent of more than $36,000 by reason of the increased purchase price procured through the efforts of said counsel.

Plaintiffs' causes of action arose under the statute heretofore set forth, when their rightful demands for

permission to inspect the books and records of defendant corporation were wrongfully refused by the individual defendants on their own behalf and on behalf of said corporation, and neither the subsequent settlement of the consolidated suit, the subsequent dissolution of defendant corporation, the receipt by plaintiffs of their distributive shares of the assets of said corporation, the fact that plaintiff Denton might have thereafter transferred her stock, nor the further fact that plaintiffs held no certificates of stock in defendant corporation (same having been theretofore dissolved) when the instant action was instituted, can affect or defeat their right to recover in this case.

We are impelled to conclude that defendants' violations of the provisions of the statute in question were flagrant and that the trial court properly entered the judgments against defendants.

The judgments of the circuit court of Cook county in favor of plaintiffs and against defendants are affirmed.

*Judgments affirmed.*

FRIEND, P. J., and SCANLAN, J., concur.