Edna Crouse, Appellee, v. Rogers Park Apartments, Inc., Sidney Frisch and Marguerite Zito, Appellants.

Gen. No. 45,292.

Opinion filed May 22, 1951. Rehearing denied June 1, 1951. Released for publication June 1, 1951.

MAYER GOLDBERG, and GEORGE J. FOX, of Chicago, for appellant.

JOSEPH B. GILBERT, of Chicago, for appellees.

MR. PRESIDING JUSTICE SCHWARTZ delivered the opinion of the court.

This is an appeal from an order awarding a writ of mandamus to compel defendants to produce the stockholders' list of defendant corporation. The president of the corporation is the owner of 70% of the stock and in complete control. He used the stockholders' list to submit to stockholders an offer of $50 per share. Plaintiff, the owner of five shares, upon receiving the offer consulted her lawyer who called the president and told him that the price offered was inadequate, that plaintiff was willing to offer $60 per share to all stockholders and for that purpose requested the stockholders' list. He was advised to serve a demand, which he did. Receiving no reply, he called the president and was told bluntly that plaintiff was not entitled to the list. The evidence shows that plaintiff had acquired her stock about three years before the event in question; that her offer was genuine; and that she was able and willing to provide the funds. The question, therefore, is whether the president having used the stockholders' list for the purpose of communicating his own offer can properly deny a minority stockholder the right to make his fellow stockholders a higher offer. The defense is based principally on the ground that plaintiff desired the list in order to speculate in the stock and that this is not a proper purpose within the meaning of the present statute granting the right. The defense is not in our opinion supported by the facts

nor by a correct understanding of the existing law. For that, it is necessary to consider the history of the law prior to the passage of the present Act.

■ At common law the right of a stockholder to inspect and examine books of a corporation was recognized but was not granted to gratify mere idle curiosity. It was necessary to show some specific interest or *some beneficial purpose. Stone v. Kellog,* 165 Ill. 192, 204 (1896) citing High on Ex. Legal Rem. sec. 310, 2 Spelling on Ex. Relief, sec. 1612; *Guthrie v. Harkness,* 199 U. S. 148 (1905). There was such powerful resistance by corporate officers to allowing minority stockholders this right and such strong feeling for its preservation that the common-law qualifications, reasonable as they appeared, were wiped out by statute in many states and the right made absolute. The 1872 Corporation Act of Illinois as interpreted by our courts made the right of inspection almost absolute. The stockholder did not have to show any reason or any definite or legitimate purpose for examination. If such a defense was made, the burden was on defendant to allege and prove it. *Stone v. Kellogg, supra.* This was followed by litigation which revealed that stockholders' lists were sought by traders, by those desiring to sell lists, and by those who purchased a share or two for the deliberate purpose of embarrassing the officers. That resulted in amendments to the Act which limited the right to an examination for "any proper purpose." (Ill. Rev. Stat. 1949, vol. 1, ch. 32, par. 157.45 sec. 45 [Jones Ill. Stats. Ann. 32.045.]) In the interpretation of this amended Act, the burden has been put on the stockholder to allege and prove a proper purpose. *Morris v. Broadview, Inc.,* 385 Ill. 228; *People v. Bowen Industries, Inc.,* 327 Ill. App. 362; *Bart v. Pine Grove, Inc.,* 326 Ill. App. 426.

■ In *Morris v. Broadview, Inc., supra,* the stockholder showed no purpose at all and was denied

322

the list. In its opinion the court stated (p. 235) that while courts should be vigilant in protecting minority shareholders from their corporate agents, it was equally necessary that the corporate structure and stockholders as a whole be protected *against any person acquiring a single share of the stock for the sole purpose of trading in the stock,* as was the case in *Day & Co. v. Booth,* 123 Me. 443, 123 Atl. 557. In *Doggett v. North American Life Ins. Co.,* 396 Ill. 354, the court held that this section of the Act was not applicable to insurance companies. In making a summary of the common-law restrictions, the court used the words ''for speculative . . . purposes.'' In *Sawers v. American Phenolic Corp.,* 404 Ill. 440, the court found that an investment broker who had never before exhibited any interest in the affairs of the corporation, was not sincere in his alleged purpose to communicate with fellow stockholders concerning the business affairs of the corporation. The court approved the definition of proper purpose in the *Doggett* case, but also defined a ''proper purpose'' as one in which ''a stockholder seeks information bearing upon the protection of his interest and that of other stockholders . . . .'' (p. 449.)

Illinois courts have not clarified what is meant by speculator or the extent to which that would defeat the right, unless it be the language in *Morris v. Broadview, Inc., supra,* that a stockholder who has acquired one share for the sole purpose of getting the list is the type of speculator who should be denied the right to inspect the list. In common understanding, a speculator in stocks is one who buys and sells on a quick turnover basis. From time to time other courts have discussed ''speculation'' as an improper purpose, but when actually passing on the question they have seldom so decided. In the recent case of *Bundy v. Robbins & Myers* (Ohio App.), 75 N. E. (2d) 717, the court, in

323

construing a statute of Ohio (where the law is substantially the same as that of Illinois) held that a dealer who stated that he desired the list in order to press his candidacy for a directorship, was entitled to it even though he had speculative motives. The court was of the opinion that speculation alone was not ´a´ valid reason to preclude an inspection of a stockholders' list, saying ". . . it is probable that the majority of investors in common stock are engaged in a speculative venture." Other cases which have not viewed the matter of "speculation" with alarm are *Lawshe v. Royal Baking Powder Co.,* 54 Misc. 220, 104 N. Y. Supp. 361; *State ex rel. Costello v. Middlesex Banking Co.,* 87 Conn. 483, 88 Atl. 861; *Knox v. Coburn,* 117 Me. 409, 104 Atl. 789.

The facts in the instant case more closely resemble the case of *Vigran v. Hamilton,* 321 Ill. App. 541. (Leave to appeal denied June 12, 1944.) In that case minority stockholders filed suit to enjoin the sale of the property of a corporation and demanded a list of shareholders for the purpose of communicating with fellow stockholders concerning the proposed sale. The suit to enjoin was settled when a sale at a considerably higher price than originally proposed was made. Thereupon plaintiffs sued for the penalty provided by the Act for refusal to allow the inspection of the list. Judgment for plaintiffs was rendered in the lower court and upon appeal was affirmed on the ground that it was a proper purpose for plaintiff stockholders to communicate with their fellow stockholders relative to the sale of assets of a corporation. So far as the stockholder is concerned the sale of his stock and the sale of the corporation's assets may well be the same in money return. Frequently, as is well known, where a sale of all stock or all the assets is contemplated, either alternative may be used, with the same result. It is as important to stockholders to get the best price for

their stock as it is for the corporation to get the best price for its assets.

██ Defendants argue that inasmuch as plaintiff owned but a small percentage of the stock, her purpose was either to speculate or to compel defendants to pay her a higher price. But that is *pure speculation* on their part. Nothing in the evidence supports it. It is not contended that plaintiff is a broker, dealer, or desires to sell the list to a broker. Indeed, she does not appear to be a speculator at all because she bought her stock approximately three years before she received the president's offer. But assuming that it was speculation, may the president and owner of a majority of the stock of a corporation use a stockholders' list to do his own trading and deny it to other stockholders? Defendant Frisch, the president, testified in substance that he had made offers for the stock in order to provide a market, presumably for those stockholders who might be under pressure to sell. Assuming the price was fair, that was a worthy purpose, but he should not have denied his stockholders access to a still better market. If he had any fears or apprehensions concerning the use that might be made of the list by plaintiff (and there is nothing to support such apprehensions), he could have had the secretary of the corporation transmit the offer to the stockholders upon condition that plaintiff do whatever was necessary or proper to make sure that the offer when accepted would be carried out. This is a method now commonly used, particularly in proceedings before the Securities and Exchange Commission, and if offered to plaintiff and refused by her would have lent some credence to defendants' otherwise unsupported contentions.

██ Plaintiff has made the sound point that the individual defendants occupied positions of trust and that it was a violation of their trust to permit the use of the list by Frisch and to deny it to plaintiff. De-

fendants argue that in Illinois there is no fiduciary relationship involved in a transaction or negotiation for stock between an officer of a corporation and a stockholder. Defendants misconceive the point. The individual defendants were trustees of the stockholders' list as well as of other books and records of the corporation. In *Morris v. Broadview, Inc., supra,* where access to a stockholders' list was involved, the court described the officers of a corporation as "agents and trustees . . . who should always be held to the highest degree of fidelity to their trust." It was an improper discharge of defendants' duty as such trustees to so use the list as to confine the market for the stock to defendant Frisch alone. In so doing they were not only denying plaintiff the right to make a higher offer for the stock, but were denying the other stockholders the right to receive this higher offer.

 Defendants have argued at considerable length that the demand for the list was made by plaintiff's lawyer acting for her, instead of plaintiff. That point was not raised by defendants at the time the demand was made. It is based on the use of the personal pronoun "his" as relating to the stockholder individually and not to his attorney or agent. An examination of the Act reveals that the use of this pronoun was the natural method of draftmanship and has no such significance as counsel would ascribe to it. In *Sawers v. American Phenolic Corp., supra,* and in *Vigran v. Hamilton, supra,* demand was made through a lawyer although the point was not raised in the argument in either case. This right of a stockholder has been recognized by the courts as a valuable one. The history of statutory policy in Illinois reveals that it is so regarded. It is not to be circumscribed by such meticulous and technical construction as to make it only a snare and a delusion. The statute permits the inspection itself to be made by a stockholder's agent or attorney

326

and permits oral demand. Defendants, at the time of the demand, would have been within their rights to require proof of authority of the lawyer or some written authorization from plaintiff herself, if they desired to stand on that technical ground. Having failed to do so, they cannot now be heard to complain.

*Judgment affirmed.*

FRIEND and SCANLAN, JJ., concur.