SIXTH DIVISION

February 8, 2002

No. 1-01-0714 

JEFFREY HAGEN,

Plaintiff-Appellant,

v.

DISTRIBUTED SOLUTIONS, INC., and CRAIG JOHNSON,

Defendants-Appellees.

)))))))))))

Appeal from the

Circuit Court of

Cook County

Honorable

DOROTHY KIRIE KINNAIRD

Judge Presiding.

PRESIDING JUSTICE GALLAGHER delivered the opinion of the court:

Plaintiff, Jeffrey Hagen, filed an action for a writ of 
mandamus
 to allow plaintiff to inspect the books and records of defendant corporation Distributed Solutions, Inc. (DSI).  Plaintiff now appeals from the trial court's order granting summary judgment to DSI and defendant Craig Johnson (Johnson)(collectively, defendants) and denying plaintiff's motion for reconsideration.  We reverse and remand.

DSI, founded by Johnson in 1991, manufactured computer systems software and provided consulting services which included payroll services for small companies.  Johnson was the sole officer and director of DSI, as well as the majority shareholder with approximately 74% of the total shares.  Plaintiff was a minority shareholder with approximately 26% of the total shares, as well as an employee of the corporation.  Plaintiff resigned in early 1992 after which he had no day-to-day involvement with the corporation.  Plaintiff received financial statements of DSI on a quarterly basis.

In 1993, Johnson sold a portion of DSI's business -- its payroll services for small companies -- to himself and a few other minority shareholders and established a company called Distributed Payroll Solutions, Inc. (DPSI).  As part of the sales contract, DSI became a shareholder in DPSI.  This investment was carried on the books of DSI and valued at $45,000.  Johnson subsequently operated DSI and DPSI out of the same location.

In 1994, plaintiff filed an action in Lake County seeking to force a buyout of plaintiff's shares or seeking the dissolution of DSI.  Plaintiff apparently was unsuccessful.

In 1996, Johnson brought suit against plaintiff alleging that plaintiff had not paid full value for his shares.  Plaintiff, acting 
pro se
, attempted to file a countersuit claiming oppressive actions by Johnson, but apparently failed to adequately state a cause of action.  Johnson lost his suit in arbitration, rejected the arbitrator's decision and requested a trial in which the court ultimately ruled in favor of plaintiff. 

In or about October 1997, plaintiff requested and was given access to review the books and records of DSI.  The records revealed that DSI reportedly had sales revenues of $739,034 and listed $541,168 in assets on its balance sheet in 1996.  DSI’s total revenues in 1997 were reported as being $934,532.16.

At some point in 1998, Johnson notified plaintiff that an investment in Lilly Software, which had been carried on DSI's books, actually belonged to Johnson and had been mistakenly placed on DSI's books.  Johnson removed the asset from the books and also reversed a $30,000 dividend paid by the Lilly investment to DSI.  Plaintiff questioned Johnson, who explained that the investment had only been on DSI's books for less than a year.  Plaintiff  wrote a letter to Johnson questioning this explanation.  Apparently, plaintiff believed that Johnson's statement was contradicted by DSI's financial statements showing the investment had been carried on DSI’s books for approximately two years. Johnson did not respond to plaintiff's letter.

In a letter dated July 28,1998, however, plaintiff was notified that Johnson, as the sole officer and majority shareholder, had adopted a resolution to dissolve DSI.  Plaintiff was also provided with an income statement and balance sheet which showed that all of the assets of DSI had been sold or written off.  The investment in DPSI had been sold to Johnson for $267.50 and a write-off of $44,732.50 was charged to DSI.  The reasons contained in the resolution to dissolve DSI, signed by Johnson, were threefold: (a) that the corporation conducted no business; (b) that the corporation had no prospects for future business; and (c) that there were no employees of the corporation.

On or about August 20, 1998, a special meeting of the shareholders took place which was attended by Johnson, plaintiff and plaintiff's attorney.  Plaintiff voted against the dissolution of the corporation and Johnson voted for dissolution.  Thus, the resolution was passed by a majority vote of the shareholders.  DSI was dissolved thereafter; DPSI still exists with Johnson as the majority shareholder.

At some point during the meeting of August 20, 1998, however, plaintiff verbally requested corporate records showing how the various assets of the corporation were valued and to whom they were transferred.  These apparently were not provided to plaintiff during the meeting.  Instead, Johnson told plaintiff to put his request in writing.

Within two weeks, by way of a certified letter dated August 31, 1998, plaintiff made a written request pursuant to section 7.75 of the Business Corporation Act of 1983 (805 ILCS 5/7.75 (West 1992)) (the Act).  Plaintiff reiterated his request, made during the special shareholder's meeting, to review the corporate books and records.  Plaintiff received no response to his request.

On October 26, 1998, plaintiff's attorney sent another certified letter to Johnson again reiterating plaintiff's request.  Again, there was no response to this letter.

On March 17, 1999, plaintiff filed a complaint for a writ of 
mandamus
 in the circuit court of Lake County.  Unbeknownst to plaintiff, however, DSI had moved to a location near the border of Lake and Cook Counties.  DSI was actually headquartered in Cook County.  On August 13, 1999, plaintiff refiled his original complaint for a writ of 
mandamus
 in the circuit court of Cook County; plaintiff filed an amended complaint on October 25, 1999.  In his amended complaint, plaintiff alleged that his purpose in seeking relief pursuant to section 7.75 of the Act was, as set forth in his letter, threefold: (a) to aid in the determination of the present value of the shareholders' shares in the corporation; (b) to determine the financial condition of the corporation; and (c) to determine whether unauthorized and oppressive acts had occurred in connection with the operation of the corporation which impacted the value of the shareholders' shares so as to justify remedies under the Act.

On November 19, 1999, defendants filed a motion to dismiss the amended complaint, pursuant to section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 1998)), arguing that plaintiff failed to sufficiently plead a proper purpose in his complaint.  The trial court denied the motion to dismiss on December 10, 1999.  On December 30, 1999, defendants filed their answer and affirmative defenses to plaintiff's amended complaint.

  Subsequently, several status hearings transpired with respect to the pending litigation between January 2000 through July 2000.  The record reveals that a series of correspondence ensued between the parties during this period.  On February 23, 2000, defendants' counsel sent a letter to Hagen's counsel stating: “[O]ur client has no objection, nor has it ever objected, to Mr. Hagen's reasonable examination of the books and records of [the corporation].”  The letter further stated that defendants objected to plaintiff's demands for narrative answers and requested a written response informing them “exactly which corporate books and records” that plaintiff was seeking to examine.  Plaintiff's attorney responded in writing on February 28, 2000, in which he took issue with defendants' delayed assertion that it did not object to plaintiff's examination of the records.  Plaintiff's counsel noted that before the litigation began, two separate demands were made and were not responded to, forcing the litigation.  Plaintiff's counsel again explained that plaintiff was seeking to review DSI's books and records - as the statute expressly permitted.  Defendant’s attorney responded in writing on March 2, 2000; plaintiff’s counsel replied in writing on April 28, 2000.

On June 12, 2000, defendants filed a motion for summary judgment asserting that, as a matter of law, plaintiff could not maintain his action for a writ of 
mandamus
.  Defendants again argued that plaintiff did not have a proper purpose for requesting the records.  Defendants additionally contended that plaintiff's written request to inspect the corporation's records failed to meet the requirements of section 7.75(b) of the Act because plaintiff failed to specify the documents he wanted to review.  In response, on July 17, 2000, plaintiff filed a cross-motion for summary judgment to compel defendants by 
mandamus
 to produce the entirety of the corporation's books and records.  On July 24, 2000, the trial court heard oral arguments on both motions.  The trial court, however, did not rule on either motion for summary judgment, but continued them to August 21, 2000.

Instead, the court ordered plaintiff to submit a revised request by August 3, 2000, and ordered defendants to respond by August 17, 2000.  On August 3, 2000, plaintiff sent his revised written request in which he listed 47 items.  On August 9, 2000 , defendants indicated that some of the documents would be made available, further indicated that some of the documents did not exist, and further objected that some of the requested items were not stated with sufficient particularity.

On August 21, 2000, at a status hearing on the pending motions for summary judgment, the trial court entered an order that on August 25, 2000, plaintiff review the records made available by defendants.  Again, the trial court did not rule on the pending motions for summary judgment, but again continued them until September 6, 2000.

Finally, on August 25, 2000, approximately two years after plaintiff's original request, plaintiff and his attorney were allowed to physically review corporate documents.  Plaintiff, in his brief, states that the entirety of the corporation's records consisted of 12 boxes and that defendants allowed plaintiff access to all.

There were additional court orders and there subsequently ensued - again - correspondence between the parties over the inspection of the corporation’s records.  In November 2000, both parties filed supplemental briefs in support of their motions for summary judgment.

Eventually, on November 28, 2000, the trial court heard additional oral argument on the motions for summary judgment.   The transcript of the hearing indicates the court also conducted a status hearing regarding the inspection of the corporation's records.  The court ultimately decided that the documents - with the exception of a lease - had been provided at that point, that no trial was necessary, and that plaintiff's request was not specific enough to justify entering a meaningless writ of 
mandamus
 for the sole purpose of having a hearing to determine damages.  The court granted defendants' motion for summary judgment and denied plaintiff's cross-motion for summary judgment.

On December 27, 2000, plaintiff filed a motion for reconsideration which was denied by the trial court on January 22, 2001.  On February 20, 2001, plaintiff filed a notice of appeal of the order granting defendants’ motion for summary judgment and the order denying plaintiff’s motion for reconsideration.
(footnote: 1)
 The reviewing court applies a 
de novo
 standard of review to summary judgment orders. 
Outboard Marine Corp. v. Liberty Mutual Insurance Co.
, 154 Ill. 2d 90, 607 N.E.2d 1204 (1992).  Because the parties here filed cross-motions for summary judgment, they have agreed that no genuine issue of material fact exists and invite the court to decide the issues presented as questions of law. 
Land v. Board of Education of the City of Chicago
, 325 Ill. App. 3d 294, 299, 757 N.E.2d 912 (2001).  Where genuine issues of material fact exist, however, the mere filing of cross-motions for summary judgment does not require that the court grant the requested relief to one of the parties. 
Land
, 325 Ill. App. 3d. at 299, 757 N.E.2d 912.  We nonetheless agree with the parties that no genuine issues of material fact exist and the issues presented are questions of law.

In addition, the issue before this court is whether the trial court correctly applied the plain language of section 7.75 of the Act (805 ILCS 5/7.75 (West 1992)) in determining that plaintiff’s written request was insufficiently specific. The trial court’s decision construing the applicability of section 7.75 of the Act did not involve the weighing of evidence or the exercise of discretion.  Thus, although the instant case was a complaint for a writ of 
mandamus
, the usual discretionary standard in 
mandamus
 actions is inapplicable. See, 
e.g.
, 
Villarreal v. Village of Schaumburg
, 325 Ill. App. 3d 1157, 759 N.E.2d 76 (2001) (explaining that where trial court's decision to deny or grant a petition for 
mandamus
 turns solely on the construction of a statute, which is a question of law, review is 
de novo
).

The trial court determined, and we agree, that plaintiff had a proper purpose for requesting the inspection.  In granting defendant's motion for summary judgment, however, the trial court agreed with defendants' contention in their motion that plaintiff was not entitled to a writ of 
mandamus
, as a matter of law, because plaintiff's request was not sufficiently “particular” for purposes of the Act.  Because no Illinois court has addressed such an argument, this is a case of first impression.

Section 7.75 of the Act provides, in pertinent part, as follows:

“Corporate records--Examination by shareholders. * * *

(b) Any person who is a shareholder of record shall have the right to examine, in person or by agent, at any reasonable time or times, the corporation's books and records of account, minutes, voting trust agreements filed with the corporation and record of shareholders, and to make extracts therefrom, but only for a proper purpose.  In order to exercise this right, a shareholder must make written demand upon the corporation, stating with particularity the records sought to be examined and the purpose therefor.

(c) If the corporation refuses examination, the shareholder may file suit in the circuit court of the county in which either the registered agent or principal office of the corporation is located to compel by 
mandamus
 or otherwise such examination as may be proper.  If a shareholder seeks to examine books or records of account the burden of proof is upon the shareholder to establish a proper purpose.  If the purpose is to examine minutes or the record of shareholders or a voting trust agreement, the burden of proof is upon the corporation to establish that the shareholder does not have a proper purpose.

(d) Any officer, or agent, or a corporation which shall refuse to allow any shareholder or his or her agent so to examine and make extracts from its books and records of accounts, minutes and records of shareholders, for any proper purpose, shall be liable to such shareholder, in a penalty of up to ten per cent of the value of the shares owned by such shareholder, in addition to any other damages or remedy afforded him or her by law.  It shall be a defense to any action for penalties under this Section that the person suing therefor has within two years sold or offered for sale any list of shareholders of such corporation or any other corporation or has aided or abetted any person in procuring any list of shareholders for any such purpose, or has improperly used any information secured through any prior examination of the books and records of account, or minutes, or records of shareholders of such corporation or any other corporation.” 805 ILCS 5/7.75 (West 1992).

Plaintiff's letter stated as follows:

“Dear Craig:

As a follow up to our meeting of August 20, 1998, I hereby request that the following information be provided to me:

Copies of any business valuations or appraisals of DSI or any of its assets.

Copies of all financial statements issued by Distributed Payroll Solutions, Inc. ('DPSI') from inception of DPSI through December 31, 1997.  If any 1998 financial statements are available, I request copies of those also.

Copies of any business valuations or appraisals of DPSI or any of its assets.

Detail [
sic
] list of all assets owned and leased by DSI as of July 31, 1998.  This list should include for each asset (i) cost basis, (ii) accumulated depreciation (if any), and (iii) estimate of fair market value.  Please note that the depreciation schedule that you previously provided did not identify each separate asset and indicated leases without detailing specific assets being leased.  In addition to providing a list of the specific equipment leased, please provide details of the lease (i.e., terms of the lease including buyout, and the final disposition of the leases).

Detail [
sic
] explanation as to how assets of DSI were transferred.  This explanation should include (i) a description of the assets transferred, (ii) identification of the transferee, and (iii) whether any consideration was paid by the transferee in exchange for such assets.

Written explanation of the Lilly transaction.  Specifically, how did the Lilly stock get on the books of DSI in the first place?  Was the stock acquired by DSI in lieu of fees?  Was any other consideration paid by DSI to acquire the Lilly stock.  If so, what type of consideration and how much?

Detail [
sic
] list of intercompany transactions between DSI and DPSI.  This list should reflect expenses (
i.e.
, rent, utilities, etc.) shared by the two companies along with those expenses or obligations of one company paid by the other.  

The Illinois Business Corporation Act of 1983, Section 7.75, provides that a shareholder of a corporation shall have the right to examine the books and records of such corporation.  This letter shall serve as my demand to review the above described documents to (i) aid in the determination of the value of my shares, (ii) determine the financial condition of DSI, and (iii) determine whether unauthorized and oppressive acts have occurred in connection with the operations of DSI which impact the value of my ownership stake in the company and which may justify remedies under the Illinois Business Corporation Act.

I demand that the above described documents be provided to me no later than thirty (30) days from the date of this letter.

Sincerely,

Jeffery M. Hagen”

The narrow issue we must decide is whether plaintiff's written request satisfied the statutory requirement that it “stat[e] with particularity the records sought to be examined” so as to justify plaintiff's compelling such examination by 
mandamus
 or otherwise.  On appeal, plaintiff has contended that defendants’ claim that his request was not specific enough was a “new strategy” which defendants tried only after the trial court, in denying defendants’ motion to dismiss, implicitly ruled that plaintiff had a proper purpose.  Plaintiff further notes that defendants’ “affirmative defenses did not mention the defendants’ purported reason for not responding to the request -- that the request did not specify with particularity the documents requested.”  Thus, concludes plaintiff, “[g]iven that [defendants] simply provided access to the twelve boxes of documentation, this whole argument was moot and was just a ruse that was incorrectly accepted by the court.”

As the transcript of the proceedings below shows, the trial court recognized the significance of defendants' total disregard of plaintiff's written requests.  At the initial hearing on the cross-motions for summary judgment, on July 24, 2000, defense counsel indicated that all of the records of the now-defunct corporation consisted of a few boxes.  The trial court correctly noted as follows:

“[THE COURT]: We are taking all this effort and energy for a few boxes of documents.  Now, is there any reason why, when presented with an appropriate letter, you wouldn't give them all the tax returns, all financial statements, all back up for financial statements, all check registers, all written appraisals, all estimates, or any written documents that showed the value of any assets.

A document file, any documents in fact that show how the proper  – nothing you have to create, but any documents that show how they came up with their final value of assets.”

The trial court additionally acknowledged that usually such cases are dealing with a whole warehouse of documents whereas here “[w]e are really talking about a couple of boxes.”  The court stated that there could have been better cooperation in response to plaintiff's request from the beginning.

Again, during the November 28, 2000 hearing, the trial court posed the question of what plaintiff should have done when he received no response.  The trial court stated as follows:

“[THE COURT]: Didn't you have any responsibility when you got the August and October requests if you have no documents under number one, copies of business valuation or appraisals, didn't you have a responsibility then to tell him, we don't have anything, because what else is the shareholder suppose[d] to do?  He puts two requests in.  He has no response, assuming that is the proper purpose, assuming –.”

Nonetheless, despite the facts that defendants had totally ignored plaintiff's request, defendants had not even provided any of those requested documents which did indeed exist, and that the entirety of the defunct corporation's records consisted of a few boxes, the court did not grant plaintiff's motion for summary judgment and issue a writ of 
mandamus
.  Instead, with respect to the cross-motions for summary judgment, the trial court concluded that plaintiff's request did not satisfy the particularity requirement of the statute, and therefore, despite a ruling that there was a proper purpose, no writ of 
mandamus
 would issue without a “proper” request on file.

In view of its decision, the significance of defendants' disregard of plaintiff's request, although recognized by the trial court, was ultimately determined to be irrelevant.  Thus, the trial court apparently concluded that defendants were not required to respond.  We believe, however, that the relevance of defendants' disregard and the position in which the disregard placed plaintiff were underestimated by the trial court.  It is undisputed that plaintiff filed his 
mandamus
 action only after defendants, by failing to respond in any way to plaintiff's two written requests, refused to permit plaintiff access to the corporation's books and records.  In view of the fact that defendant's claim that plaintiff's request was not sufficiently particular came only after plaintiff filed a 
mandamus
 action, we believe it is proper for us to consider whether defendants have forfeited their right to claim that plaintiff’s request was not stated with particularity.

A somewhat analogous situation arose in 
Crouse v. Rogers Park Apartments, Inc.,
 343 Ill. App. 319, 99 N.E.2d 404 (1951).  In 
Crouse
, the plaintiff filed a 
mandamus
 action against the defendant corporation and others to compel the production of the stockholders' list of the defendant corporation.  The trial court entered a judgment awarding a writ of 
mandamus
 and defendants appealed.  The appellate court rejected the defendants' claim that the plaintiff did not have a proper purpose for receiving the list.

Defendants, however, raised an additional argument.  Although the statute permitted the inspection itself to be made by a shareholder's attorney, defendants argued that the demand had to be made by the actual plaintiff and there, the demand for the list was made by the plaintiff's lawyer acting for her, instead of the plaintiff. 
Crouse
, 343 Ill. App. at 326,  99 N.E.2d at 407.  The court considered that this “point was not raised by defendants
 at the time the demand was made.”
  (Emphasis added.) 
Crouse
, 343 Ill. App. at 326, 99 N.E.2d at 407.  The court additionally noted that “[d]efendants, 
at the time of the demand
, would have been within their rights to require proof of authority of the lawyer or some written authorization from plaintiff herself, if they desired to stand on that technical ground.  Having failed to do so, they cannot 
now
 be heard to complain.” (Emphasis added.) 
Crouse
, 343 Ill. App. at 327, 99 N.E.2d at 408.  In so deciding, the court explained that a shareholder's right to examine books of corporation is a valuable one that “is not to be circumscribed by such meticulous and technical construction as to make it only a snare and a delusion.” 
Crouse
, 343 Ill. App. at 326, 99 N.E.2d at 408.  In essence, the court decided that defendants forfeit their right to raise an argument that a plaintiff is not in technical compliance with the Act by not raising the technical ground 
at the time of the demand
.

Here, too, defendants failed to assert any claim that plaintiff's request was not specific enough at the time his demand was made.  Rather, defendants' claim that plaintiff's request was not sufficiently “particular” was first alluded to in a letter dated February 23, 2000, a year and a half after plaintiff's initial request.  As plaintiff noted below, this claim came only after (1) defendants had ignored plaintiff's initial written request, (2) defendants had ignored plaintiff's second written request made through his retained attorney, (3) plaintiff was compelled to institute litigation, and (4) defendants had briefed and argued - unsuccessfully - a motion to dismiss plaintiff's complaint based on lack of a proper purpose, a baseless claim, as a matter of law.  The defendants raised the argument before the trial court, in their motion for summary judgment, filed on July 12, 2000.  This court has noted that a corporation's failure to respond within a reasonable time to a shareholder's written demand for inspection of the corporation's books and records does, under proper circumstances, constitute a denial of access which is a violation of the Act. See 
In re Estate of Kaplan,
 67 Ill. App. 3d  818, 384 N.E.2d 874 (1978).  This case illustrates one such set of proper circumstances.

Thus, it is apparent that defendants' failure to respond to plaintiff's written demands for inspection of the corporation's books and records, under the circumstances of the present case, constituted a denial of access, which was a violation of the Act.  Nonetheless, we shall address defendants' argument that, because the Act, as amended in 1983, now requires that the shareholder state “with particularity” the records sought to be examined (805 ILCS 5/7.75(b) (West 1992)), defendants did not need to respond at all, because the request did not meet this statutory requirement.

We shall first dispense with defendants' assertion that because they were “looking at the request as a whole, not as piecemeal,” they were somehow excused from their blanket refusal to respond to plaintiff's written request and were justified in ignoring the request in its entirety, including the requested items which did exist and which were stated with particularity.  Defendants, citing 
Weigel v. O'Connor
, 57 Ill. App. 3d 1017, 373 N.E.2d 421 (1978), assert in this appeal that “there does exist case law that states that a shareholder's request should not be treated in a piecemeal fashion by the corporation.”  Defendants have misconstrued
 the import of the 
Weigel
 court's discussion regarding piecemeal compliance and likewise misapprehended its
 recognition of the rights of a shareholder.

The court in 
Weigel
 decided that it was improper for the 
trial court
 to circumscribe the shareholder's right to examine corporate books and records and to allow only piecemeal inspection when the record indicated that the shareholder had presented sufficient evidence of a proper purpose. 
Weigel
, 57 Ill. App. 3d at 1027, 373 N.E.2d at 428.  Thus, the 
Weigel
 court held that once a proper purpose has been established “the shareholder's right [to inspect] extends to 
all
 books and records necessary to make an intelligent and searching investigation”and “ 'from which he can derive any information that will enable him to better protect his interests. [Citation.]' ”
 
(Emphasis added.) 
Weigel
, 57 Ill. App. 3d at 1027, 373 N.E.2d at 428.  In other words, as the court explained, “[a] shareholder need not establish a proper purpose in respect to each document he desires to examine; a proper purpose which would entitle him to the right of inspection generally is sufficient.” 
Weigel
, 57 Ill. App. 3d at 1027, 373 N.E.2d at 428.  Therefore, defendants' reliance on the discussion of piecemeal compliance to excuse its refusal to give any records is misplaced.

While it is true that 
Weigel
 was decided before the Act was amended to include the requirement that a shareholder's request must state with particularity those records he requests, we note that the plaintiff in 
Weigel
 had “made a specific demand for designated documents.”
 Weigel
, 57 Ill. App. 3d at 1028, 373 N.E.2d at 428.  More importantly, however, plaintiff here did state with particularity those records he requested and made a specific demand for designated documents.  That some of those documents did not exist does not change that fact.  That some of the documents would only exist if created or produced by defendants does not convert plaintiff's request for nonexistent records into a request to create such records, particularly where defendants could have and arguably should have responded that such documents did not exist.  Moreover, although the trial court considered the undisputed fact that some of those documents did exist and were not supplied, the court implicitly condoned defendants' unilateral decision that they could view the request as a whole and ignore it entirely because some of the documents did not exist, merely because defendants decided that the request did not meet the particularity requirement in section 7.75 of the Act.

Although no court has construed the requirement of particularity in section 7.75 of the Act, we find persuasive the case of 
Parsons v. Jefferson-Pilot Corp., 
333 N.C. 420, 426 S.E.2d 685 (1993), in which the Supreme Court of North Carolina construed a comparable “reasonable particularity” requirement found in North Carolina's Business Corporation Act (N.C. Gen. Stat. §55-16-02(c)(2) (1990)).  The court analogized the requirement to the “reasonable particularity” requirement contained in Rule 34(b) of the Federal Rules of Civil Procedure.  The court noted as follows:

“In determining whether the 'reasonable particularity' requirement of this federal rule governing document production has been satisfied, it has been recognized that

the test must be a relative one, turning on the degree of knowledge that a movant in a particular case has about the documents he requests.  In some cases he has such exact and definite knowledge that he can designate, identify, and enumerate with precision the documents to be produced.  This is the ideal designation, since it permits the party responding to go at once to his files and without difficulty produce the document for inspection.  But the ideal is not always attainable and Rule 34 does not require the impossible.  Even a generalized designation should be sufficient when the party seeking discovery cannot give a more particular description and the party from whom discovery is sought will have no difficulty in understanding what is wanted.  The goal is that the designation be sufficient to apprise a man of ordinary intelligence what documents are required.”
Parsons
,
 
333 N.C. at 429, 426 S.E.2d at 691, quoting 8 C. Wright & A. Miller, Federal Practice and Procedure §2211, at 628-31 (1970).

The 
Parsons
 court further opined that “[w]hether a shareholder has described his purpose or the desired records with reasonable particularity necessarily depends upon the facts and circumstances of each case.” 
Parsons
, 
333 N.C. at 429, 426 S.E.2d at 691.  We agree with the reasoning and decision of the 
Parsons
 court.

Under the facts and circumstances of this case, plaintiff's written demand satisfied the statutory requirement that the demand must “stat[e] with particularity the records sought to be examined and the purpose therefor.” 805 ILCS 5/7.75(b) (West 1992).  Here, plaintiff clearly explained his threefold purpose, which notably included his purpose of “determin[ing] whether unauthorized and oppressive acts have occurred in connection with the operations of DSI which impact the value of my ownership stake in the company and which may justify remedies under the Illinois Business Corporation Act.”  Looking at plaintiff's written demand, as a whole, which stated this purpose in conjunction with an enumerated related list of items he sought to inspect, the demand sufficiently apprised defendants of those records sought to be inspected by plaintiff.  Therefore, the trial court should have decided that defendants' refusal to turn over 
any
 records was a violation of the Act entitling plaintiff to a writ of 
mandamus
.

We believe our decision is consistent with the construction given to a requirement of particularity in Illinois as it has been discussed in other contexts in which the particular circumstances of each case are considered and where it has been generally acknowledged that the rationale for a requirement of particularity is to adequately apprise or inform another of something. See, 
e.g.
, 
Lyon Metal Products, L.L.C. v. Protection Mutual Insurance Co.
, 321 Ill. App. 3d 330
, 339-40, 747 N.E.2d 495, 503 (2001)(explaining that posttrial motion need only indicate the grounds relied upon with sufficient particularity 
to afford the trial court
 the identity of the error); 
People v. Burmeister
, 313 Ill. App. 3d  152, 158, 728 N.E.2d 1260,1266 (2000)(noting that test for sufficiency of description in search warrant is whether it 
enables police officer
 to execute warrant leaving no doubt and no discretion as to the person or premises to be searched);
 Ciampi v. Ogden Chrysler Plymouth, Inc.
, 262 Ill. App. 3d 94, 106, 634 N.E.2d 448, 457 (1994)(holding that objections must be made with sufficient particularity 
to identify to the court
 identity of the error relied upon)
; People v. Meyers
, 158 Ill. 2d 46, 51, 630 N.E.2d 811, 815 (1994)(explaining that, in determining whether indictment is sufficient, relevant inquiry is not whether the alleged offense could be described with greater certainty, but whether there is sufficient particularity 
to enable the accused
 to prepare a proper defense)
; see also
 County of Cook  v. Illinois Wine & Spirits Co.
, 93 Ill. App. 3d 710, 417 N.E.2d 812 (1981)(holding that a complaint stated with sufficient particularity a claim upon which writ of 
mandamus
 could issue where complaint was as complete as the nature of the case allowed);
 City of Chicago v. Larson
, 31 Ill. App. 2d 450, 176 N.E.2d 675 (1961) (holding that a complaint was sufficiently particular where, because the facts were of necessity within the defendant's knowledge and not within the plaintiff's knowledge, the complaint was as complete as the nature of the case allowed).

Although the Act has undergone revision over time, the principle stated in 1944 that “courts should be vigilant in protecting minority shareholders from exploitation by those who are their agents and trustees and who should always be held to the highest degree of fidelity to their trust” has not changed. 
Morris v. Broadview, Inc., 
385 Ill. 228, 235, 52 N.E.2d 769, 772 (1944).  The Act was intended to be used as a shield, not a sword.  A court will not construe an act of the legislature so as to lead to an absurd, inconvenient or unjust result. 
Loyola Academy v. S & S Roof Maintenance, Inc.
, 146 Ill. 2d 263, 586 N.E.2d 1211 (1992).  It is unreasonable to believe that the legislature, in requiring a shareholder to state with particularity those records he was requesting, intended that a corporation can refuse to respond and refuse to turn over any records and claim the request was not particular 
enough
 after the shareholder resorts to filing a 
mandamus
 action.  It was neither the intent nor the spirit of the Act to afford a corporation an opportunity to treat the particularity requirement as a test the shareholder must pass, particularly under these circumstances where the minority shareholder stated a proper purpose and the entirety of documents of the now-defunct corporation consists of a few boxes.  We agree with defendants that this case followed an unusual procedural path in the lower court.  Nonetheless, this path could have been avoided had defendants not ignored plaintiff's request.  The trial court's decision that plaintiff's request was not particular enough, especially under the circumstances of this case, was clearly erroneous.  We conclude that plaintiff's request, as a matter of law, satisfied the statutory requirement of particularity in view of the enumerated list of items included in plaintiff's request.

Because the trial judge should have denied defendants' motion for summary judgment and should have granted plaintiff's writ of 
mandamus
, this cause is remanded to the trial court for the purpose of conducting a hearing to determine the amount of statutory penalties to which plaintiff is entitled pursuant to section 7.75(d) of the Act. 805 ILCS 5/7.75(d) (West 1992). 

Reversed and remanded with directions.

BUCKLEY and O'BRIEN, JJ., concur.

FOOTNOTES
1:
After filing a timely notice of appeal, plaintiff’s counsel was permitted to withdraw.  Plaintiff subsequently entered his appearance 
pro se
 in this appeal.